## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

FRANCISCO ROCHE and SONNY C. ROCHE,                    CASE NO:

       Debtors,

vs.

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC, and CARLSBAD
FUNDING MORTGAGE TRUST,

       Defendant(s).

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, FRANCISCO ROCHE and SONNY ROCHE, ("Plaintiffs") ("Roche"), allege violations of the Fair Debt Collection Practices Act 15 U.S.C. 1692 *et seq*. ("FDCPA") and the Florida Consumer Collection Practices Act § 559.55 *et seq*. ("FCCPA") against Defendants, Rushmore Loan Management Services LLC ("Rushmore"), and Carlsbad Funding Mortgage Trust ("Carlsbad") (collectively "Defendants"). Plaintiffs allege violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA") solely against Rushmore. Plaintiffs also allege violations of the Truth and Lending Act, 15 U.S.C. §1601 et seq. ("TILA") against Rushmore and Carlsbad. The ultimate facts supporting Plaintiff's entitlement to the requested relief are articulated in the paragraphs below.

## **JURISDICTION AND VENUE**

1.    This Court has subject matter jurisdiction under the Federal Debt Collections Practices Act, 15 U.S.C. § 1692k, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2614, the Truth in Lending Act, 15 US.C 1640(e) and 28 U.S.C. § 1331.

2.      The Court has supplemental jurisdiction over the FCCPA claims under 28 U.S.C. § 1367 because the basis of the RESPA and FDCPA federal claims involve the same debt collection practices that form the basis of the FCCPA claims.

3.      The Court has personal jurisdiction because Defendants conduct business throughout the United States, including Miami, Florida. Further, their voluntary contact with Plaintiffs to charge and collect debts in Florida made it foreseeable that Defendants would be hauled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4.      Venue is proper in this District under 28 U.S.C. §§ 1391(a)-(d) because Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced and because their contacts with this District are sufficient to subject them to personal jurisdiction.

## PARTIES

5.      Plaintiffs, Francisco Roche and Sonny C. Roche, are natural persons who reside in the City of Miami, Miami Dade County, State of Florida. At all times relevant herein, Mr. and Mrs. Roche owned and occupied the property in question, single-family residence located in Miami, Florida.

6.      Plaintiffs are a "consumer" as defined by as defined by 15 U.S.C §1692a(3) and by Fla. Stat. § 559.55(8).

7.      Defendant, Rushmore is a foreign limited liability company with its principal place of business at 15480 Laguna Canyon Road, Suite 100, Irvine CA 92618. Rushmore is one of the nation's leading specialty loan servicing companies for mortgage lenders, like Carlsbad.

8.      Defendant, RUSHMORE LOAN MANAGEMENT SERVICES, LLC ("Rushmore") is an entity that all relevant ties were engaged, by use of the mail and telephone, in

the business of attempting to collect a "debt" from Plaintiffs, as defined by 15 U.S.C §1692a(5) and by Fla. Stat. §559.55(7).

9.      Defendant, Rushmore,  is a "debt collector" as defined in the FDCPA, § 1692a(6), in that it acquired the servicing of the loan after default and uses the U.S. Mail in a business for the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10.      Rushmore is a "debt collector" as defined by 15 U.S.C. §1692a(6) and Fla. Stat. § 559.55(7).

11.      Rushmore is a "servicer" because it was responsible for "servicing" Plaintiff's mortgage loan and was scheduled to receive periodic payments from Plaintiffs pursuant to the terms of their mortgage and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan. 12 U.S.C. § 2605(i)(2)-(3).

12.      Defendant, Carlsbad, is a trust that acts as a mortgage lender for homeowners, like the Roche's. Wilmington Savings Fund Society, d/b/a Christiana Trust is the current owner of Plaintiff's mortgage loan, not individually but as trustee for the Carlsbad Funding Mortgage Trust. Carlsbad has a registered address of c/o Wilmington Saving Fund Society, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801.

13.      Carlsbad is a "debt collector" as defined by 15 U.S.C. §1692a(6) and Fla. Stat. § 559.55(7).

14.      The Plaintiff's loan is a "federally related mortgage loan" because it is secured by a first or subordinate lien, a residential real property designed for the occupancy of one to four families, and was made in whole or part by IndyMac Bank, then OneWest Bank, then Federal

National Mortgage Association, and now to Wilmington Savings Fund Society as trustee for Carlsbad Funding Mortgage Trust.

15.     Pursuant to RESPA, a servicer of a federally related mortgage loan "shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

16.     RESPA imposes certain obligations on mortgage servicers to provide information to borrowers regarding their mortgage loans. 12 U.S.C. § 2605. In 2013, the CFPB enacted new regulations implementing specific provisions under RESPA and the Dodd-Frank Act concerning mortgage loan servicers including, but not limited to, certain requirements for responding to a written request for information concerning a borrower's mortgage loan. *See* 12 C.F.R. § 1024.36 *et seq.*; Public Law 111-203, 124 Stat. 1376 (2010).

17.     RESPA provides a private cause of action against a mortgage servicer for violations of the provisions of § 2605, if brought within three (3) years of the violation. 12 U.S.C. § 2614.

18.     RESPA's mortgage servicing regulations require a servicer to provide borrowers with required disclosures that are in writing and "clear and conspicuous." 12 C.F.R. § 1024.32(a)(1).

19.     RESPA also requires a servicer to maintain policies and procedures that are reasonably designed to ensure that the servicer can provide a borrower with "accurate and timely disclosures . . . as required by this subpart or other applicable law" and "[p]rovide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's.

## FACTUAL ALLEGATIONS

20.     On or around May 21, 1997, the Roches purchased their single-family residence in Miami, Florida.

21.     On or about October 12, 2007, the Plaintiffs, refinanced their home through a loan with IndyMac Bank, F.S.B, secured by a mortgage on the property. Copies of Plaintiff's Mortgage Agreement and Mortgage Note are attached as Exhibit "A" and Exhibit "B" respectively.

22.     Mrs. Roche became critically ill during 2009 and was unable to work for six months. The Plaintiffs income was reduced substantially until such time that Mrs. Roche went back to work. During this time and prior to Mrs. Roche's critical illness, Mr. Roche had been deemed permanently and totally disabled and was receiving social security disability payments.

23.     On or around March 1, 2010, the Roches, defaulted on their loan after previously making continuous payments.

24.     On or about July 7, 2010, IndyMac Bank F.S.B. assigned the Plaintiffs' Mortgage Agreement and Mortgage Note to OneWest Bank.

25.     On September 11, 2010, Marshal Watson, P.A., on behalf of OneWest Bank filed a one count complaint in the Eleventh Judicial Circuit for Miami Dade County seeking to foreclose on the Plaintiffs' homestead.

26.     Plaintiffs retained counsel to defend them in the foreclosure.

27.     On or around September 1, 2013, OneWest Bank assigned Plaintiffs' Mortgage Agreement and Mortgage Note to Ocwen Loan Servicing. See attached Exhibit "C".

28.      On September 1st, 2015, Ocwen Loan Servicing assigned the Mortgage Agreement and Mortgage Note to Federal National Mortgage Association. Sometime between September 1st, 2015 and April 30th, 2016, Ocwen assigned its rights as the servicer to Seterus, Inc.

29.     Effective May 1, 2016, Seterus, Inc assigned its rights as the servicer of the Roches' loan to Rushmore Loan Management Services LLC. See Exhibit "D".

30.     Sometime in or around June 17, 2016, Federal National Mortgage Association assigned the Mortgage Agreement and Mortgage Note to Wilmington Savings Fund Society as trustee for Carlsbad Funding Mortgage Trust. *See* Exhibit "E".

31.     Thus, Rushmore became the servicer of the loan while the Plaintiffs' loan was already alleged to be in default. Carlsbad also became the owner of the loan while it was already alleged to be in default.

32.     On or about April 22, 2016, Rushmore, on behalf of Carlsbad and Wilmington, sent a "Notice of Assignment, Sale or Transfer of Servicing" letter to Mr. and Mrs. Roche despite their being represented by counsel. The letter identified the current creditor as Wilmington Savings Fund Society ("Wilmington") as trustee for Carlsbad. *See* Exhibit "F".

33.     On or about May 24, 2016, Rushmore, on behalf of Carlsbad and Wilmington, sent Plaintiffs a Summary of Total Debt Composition and provided an itemization of the total amount due and owing on the mortgage as $360,199.61.  The total amount breakdown included the current principal balance of $239,717.82; current unpaid accrued interest of $101,130.96; and "Other Charges" of $19,350.83. See attached Exhibit "G".

34.     On December 20, 2016, Plaintiffs retained Amador & Cuellar, PLLC, ("Counsel") as new counsel, previous counsel was Sylvia Fernandez, Esq. On December 20th, 2016, undersigned counsel filed their notice of appearance.

35.     Despite being represented by counsel, Defendant continued sending mortgage statements, correspondence and calling Plaintiffs in an attempt to collect on the mortgage.

36.     Plaintiffs applied multiples times for a modification and on June 5th, 2018, Plaintiffs

were granted a Trial Modification. The Trial Modification called for monthly payments for 6 months in the amount of $2,875.00.

37.     Plaintiffs repeatedly questioned the total amount outstanding, the principal balance, fees and the payment balance.

38.     After receiving the approval for the trial modification, Plaintiffs again requested a payoff amount and a breakdown of the total amounts due. Plaintiffs were confused by the difference between the total plan arrears set forth on the trial modification agreement of $208,097.14 and the total outstanding amount due on their mortgage statement (statement dated 6/11/18) of $171,090.53. The discrepancy was over $37,000.00 between the two. See attached Exhibit 'H'.

39.      Plaintiffs were advised that the breakdown and the total amount due on the loan, was at that time, unavailable from Defendants.

40.     Plaintiffs repeatedly disputed the amounts in writing of the principal balance and the arrears.

41.      Rushmore advised that they would clarify the numbers before the final modification was provided. Plaintiffs executed the agreement and proceeded to make all payments in furtherance of the Trial Modification, as indicated.

42.      On or about December 10th, 2018, Plaintiffs received notice of the Final Modification.

43.      The Final Modification stated a new principal balance of $407,409.14, consisting of the unpaid principal balance of the original obligation, plus accrued but unpaid interest. The Final Modification also referred to the balance as of the date of refinancing, "the unpaid principal balance of the original obligation, plus accrued but unpaid interest, secured by the existing

mortgage is 355,947.19." See Exhibit "I", Trial Modification , Paragraph 7, page 3 of 5, form 3179.

44.      The original principal balance was $239,000.00. During the trial modification period the Defendant had continued sending bills directly to Plaintiffs. The figures on the mortgage statements, the figures on the final modification, and the figures on the payoff (Plaintiffs would later learn) all differed on the outstanding amounts due, the principal balance, fees charged, etc. Moreover, Plaintiffs were being billed for items they believed were erroneous. Plaintiffs again requested an explanation of the amounts due and a full payment history.

45.      On December 10th, 2018, Plaintiffs requested a payoff and payment history directly from Rushmore and through Defendants' counsel.

46.      Plaintiffs were advised to continue making the modified payments and the information would be provided in 14 days.

47.      Plaintiffs were also informed that the time to sign the final modification would be extended pending the payoff and payment history being provided. No deadline to sign the trial modification was provided to Plaintiffs.

48.      While pending a response from the Defendants for the payoff and payment history of Defendants' loan, Defendants continued to honor the agreement and continued to make payments to Defendants, despite their concern about the discrepancies between the new principal balance, the amounts outstanding, and fees charged.

49.      Plaintiffs made their payment for January pending the payoff and payment history.

50.      On or about January 10th, 2019, Plaintiffs again reached out to Defendants counsel and Rushmore for the payoff and payment history.

51.      On or about January 14, 2019, Rushmore sent Plaintiffs an incomplete payment

history. The payment history was incomplete as it only went as far back as May 6, 2016. Plaintiffs had requested the full payment history from the origination of the loan in October of 2007 to the present. See exhibit "J", copy of incomplete payment history.

52.     Plaintiffs continued to request a full payment history and the payoff letter.

53.     On or about January 22, 2019, Plaintiffs again contacted Rushmore regarding the payoff letter and the full payment history and were told that the permanent final modification was denied for failure to sign and return to them. Rushmore stated that Plaintiffs "would never again be considered for a modification". Plaintiffs protested that this was the first time they were told that they had a certain date to sign or forfeit the modification, that they were pending the payoff letter and payment history, and that they had repeatedly requested this information either through Defendants' counsel or Defendant. They had requested these items because they had legitimate concerns about the total amount they were being asked to pay and simply wanted a payoff letter and or payment history to verify the amounts they were signing off on.

54.     Moreover, January 22, 2019 was the first time Plaintiffs were advised that the Final Modification was in jeopardy due to their request for a complete payment history and a breakdown of the Principal Balance. Until that point Defendant and Defendants' counsel assured Plaintiffs they were working on the figures for the Final Modification and to continue making payments.

55.     On or about January 31st, 2019, Plaintiffs received confirmation that their final modification had been denied for failure to submit the signed modification. Plaintiffs continued to request a payoff letter and payment history.

56.     Plaintiffs continued to make their mortgage payment and made a payment for February 2019.

57.     In March of 2019, Plaintiff returned Defendants' February 2019 payment, but kept

Defendant's January 2019 payment. Plaintiffs were advised that Defendants would not accept any further payments. Plaintiffs continued to request a payoff letter and a full payment history.

58.     Defendants mislead Plaintiffs to their detriment. Plaintiffs never received a response to their request for a full payment history, the Final Modification was revoked and Plaintiffs were was told they could never re-apply for a modification. Defendants failed to comply with payoff request deadlines and failed to provide Plaintiffs with a complete payment history and then denied the Plaintiffs modification based on Plaintiffs reliance on Defendants promises that the deadline would be extended pending the information requested

59.     On or about June 13, 2019, Plaintiff's counsels office was advised that a payoff letter had been sent on January 18, 2019.  However, Plaintiff's counsels office was unaware of the existence of this payoff letter until June 13, 2019 because the letter did not contain Plaintiffs name in the subject heading,  the payoff was not emailed to the person in Plaintiff's counsels office that had been requesting the payoff or to the designation email provided for correspondence and Defendants never advised Plaintiffs during their telephonic communications requesting said letter.

60.     Notwithstanding Plaintiffs being represented by counsel, Plaintiffs continued to receive mortgage statements requesting payments. These statements also contributed to Plaintiffs concern and confusion regarding the amounts owed as these figures differed from Defendant's payoff letter, partial payment history and modification balance.

61.     The Payoff letter stated: "These figures are good to January 31, 2019".  As of the date of this letter the amount required to pay the loan in full was $419,749.52. See Exhibit "K".

62.     This amount included $4,195 in estimated costs and fees, "Est. Fcl Fees & Cost" for $30.00, and "Est Legal Fees & Cost for $4,165.00.

63.     This amount also included other ambiguous amounts that could be estimates and

may not have actually been incurred, including an "Recoverable Corporate Advances" charge of $26,661.44. None of the Defendants provided any information or explanation concerning the $26,661.44 charge ambiguously labeled "Recoverable Corporate Advance."

64.     The total amount to pay the loan in full also included unpaid late charges of $1,297.28.

65.     The letter further advised that funds received after January 31, 2019 would require an additional $43.81 interest per day.

66.     These "estimated" amounts were based on projected amounts due in the event Plaintiffs did not actually pay before a certain future date and certain events relating to the foreclosure occurred.

67.     Rushmore, as the loan servicer, acted as a debt collector by attempting to collect amounts on behalf of the principal, Carlsbad through its trustee, Wilmington.

68.     Rushmore is a sophisticated mortgage loan servicer, and Carlsbad and Wilmington are sophisticated lenders. In a highly publicized and remarkably similar case issued by the Eleventh Circuit over three years prior to the date of Defendants' payoff letter at issue, the Eleventh Circuit reversed the district court's grant of summary judgment on the FDCPA and FCCPA claims, opining, among other things, that the Defendants were not permitted to charge "estimated" fees that had not yet incurred in their reinstatement of loan letter. *See Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) ("[The Defendants] violated the FDCPA and FCCPA by charging [the Plaintiffs] estimated attorney's fees that they had not agreed to pay in the security agreement.").

69.     Media and trade publications consistently warned the industry against including estimated fees in reinstatement or payoff letters, particularly those in the Eleventh Circuit where

the *Prescott* case is binding precedent.

70.     Additionally, these demands were a direct breach of each of the following contractual provisions permitting only recovery of amounts actually incurred: (1) Paragraph 9 of the Mortgage Agreement permitted Defendants to recover "amounts disbursed" in protecting Carlsbad's and Wilmington's interest and rights in the Mortgage Agreement; (2) Paragraph 14 of the Mortgage Agreement prohibited Defendants from charging estimated fees, stating "[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; (3) Paragraph 22 of the Mortgage Agreement permitted Defendants to collect "expenses incurred in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans; and (4) Paragraph 7 of the Mortgage Note permitted Defendants the "right to be paid back . . . for all of its costs and expenses in enforcing" the Note, which included "reasonable attorneys' fees."

71.     Therefore, Carlsbad, and its agents, also knew demanding payment of fees not yet incurred was not permitted because it violated Carlsbad's very mortgage agreement and note.

72.     Additionally, the CFPB has received over 600 complaints concerning Rushmore's improper loan servicing practices, many involving similar complaints regarding requests for debt not actually owed. https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp. Rushmore's knowledge can be imputed to Carlsbad through agency theory. *See, e.g.*, *Compass Bank v. Tania Lynn Vanpelt*, No. CA10-1624 (Fla. Cir. Ct. April 2, 2015) (finding knowledge under the FCCPA could be imputed from agents to the owner of the mortgage note and holder through principles of agency).

73.     Rushmore is a mortgage loan servicer for Carlsbad.  Rushmore charges and collects mortgage loans and fees for third party lenders, like Carlsbad. Rushmore on behalf of Carlsbad,

charged Plaintiffs thousands of dollars for estimated fees and costs, "Estimates" necessary to payoff their loan to avoid foreclosure. "Estimated" fees are fees companies expect to incur in the event that certain conditions occur but have *not* actually incurred. The Eleventh Circuit has denounced "estimated" fees associated with reinstatement/payoff of loans to be a violation of the FCCPA and FDCPA.

74.    Carlsbad, and Rushmore know that the "estimated" charges are illegal amounts that cannot be collected in a borrower's loan payoff letter because each maintains records of the actual costs and fees associated with each borrower's loan. Additionally, Carlsbad and Rushmore are sophisticated entities that know that the standard mortgage only allows them to recover fees and costs actually incurred.

75.    By the conduct described herein, Defendants knowingly violated RESPA, TILA, FDCPA, and FCCPA, which caused Plaintiffs actual injuries

## COUNT I AS TO RUSHMORE'S VIOLATION OF THE
## REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605(k)

76.    Plaintiffs re-allege and incorporate paragraphs 1 through 75 by reference herein.

77.    As a servicer of a federally related mortgage loan, Rushmore must comply with any regulation implementing the provisions of RESPA. *See* 12 U.S.C. § 2605(k)(1)(E).

78.    Rushmore is required to maintain policies and procedures that are reasonably designed to ensure that it can "[p]rovide accurate and timely disclosures to a borrower as required by this subpart or other applicable law" and "[p]rovide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 CFR 1024.38(a)(b)(1)(i),(iii)

79.    On December 10, 2018, Plaintiffs, through counsel, sent a written "request for information" to Rushmore concerning their mortgage loan.  12 C.F.R. § 1024.36.

80.     Rushmore, through Robertson Anschutz & Sneid ("RAS"), responded to Plaintiff's written request with information that contained "Estimates," "Recoverable Corporate Advance" fees, "Est Fcl Fees", "Est Legal Fees and Costs" without identifying why and for what services the fees were charged. *See* 12 C.F.R. § 1024.36(d)(1)(i); *see* 12 C.F.R. 1024.38(a)(b)(1)(i),(iii).

81.     Rushmore violated § 2605(k)(1)(E) when it failed to provide information to Plaintiff in an accurate, clear and conspicuous manner, by charging fees not yet incurred and demanding Plaintiffs pay these fees to payoff their loan. 12 C.F.R. § 1024.32(a)(1); 12 U.S.C. § 2605(k)(1)(E).

82.     Rushmore's violation of RESPA harmed Plaintiffs by depriving them of the statutory right to accurate, clear, and conspicuous information concerning their mortgage loan.

83.     As a result of Rushmore's violating 12 C.F.R. § 1024.36(d)(1)(i); 12 CFR 1024.38(a), (b)(1)(i), and (b)(1)(iii), Plaintiffs are entitled to actual damages, plus statutory damages under 12 U.S.C. § 2605(f), together with reasonable attorney's fees and costs.

## COUNT II AS TO RUSHMORE'S VIOLATION OF
## THE FAIR DEBT COLLECTION PRACTICES ACT § 1692f

84.     Plaintiffs re-allege and incorporate paragraphs 1 through 75 by reference herein.

85.     A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1)The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C § 1692f.

86.     The alleged debt that Rushmore attempted to collect from Plaintiffs was not expressly authorized by the agreement creating the alleged debt nor was it permitted by law. The estimated fees on the payoff letters, the various fees on the partial payment history log, the various fees on the monthly statements are all debts that the mortgage and note do not provide for.

87.     Plaintiffs are entitled to statutory damages together with reasonable attorney's fees and costs.

## COUNT III AS TO RUSHMORE'S VIOLATION OF
## THE FAIR DEBT COLLECTION PRACTICES ACT § 1692c(2)

88.     Plaintiffs re-allege and incorporate paragraphs 1 through 75 by reference herein.

89.     Rushmore violated 15 U.S.C §1692c(2). The Defendant was put on notice several times that the Plaintiffs were represented by counsel but continued to send billing statements to Plaintiffs.

90.     Plaintiffs are entitled to statutory damages together with reasonable attorney's fees and costs pursuant to 15 USC 1692k, together with prejudgment interest and such other relief as this Court deems just and proper.

## COUNT IV AS TO RUSHMORE'S VIOLATION OF
## THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e

91.     Plaintiffs re-allege and incorporates paragraphs 1 through 75 as though fully stated herein.

92.     Rushmore engaged in indirect "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when RAS sent the January 18, 2019  debt collection letter to Plaintiffs demanding money purportedly due for a payoff of their loan.

93.     Rushmore violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character, and status of the amount to payoff Plaintiff's mortgage.

94.     Rushmore's violation of the FDCPA harmed Plaintiffs by depriving them of the statutory right to accurate, clear, and conspicuous information concerning their mortgage loan. Additionally, Plaintiffs incurred attorney's fees, costs, and other incidental costs, in having to follow up on Rushmore's letter, which contained unclear, inaccurate, and inconspicuous information. Plaintiffs also suffered the imminent risk of having to pay an illegal amount.

95.     As a result of Rushmore's violation of 15 U.S.C. § 1692e and15 U.S.C. § 1692f, Plaintiffs are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

**COUNT V AS TO RUSHMORE'S VIOLATION OF**
**THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e**

96.     Plaintiffs re-allege and incorporate paragraphs 1 through 75 by reference herein.

97.     Rushmore engaged in indirect "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2), when Rushmore sent the partial payment history to Plaintiffs which included fees that RAS sent on the January 17, 2019  debt collection letter to Plaintiffs demanding money purportedly due for a payoff of their loan.

98.     Rushmore violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character, and status of the amount due on Plaintiff's mortgage.

99.     Rushmore's violation of the FDCPA harmed Plaintiffs by depriving them of the statutory right to accurate, clear, and conspicuous information concerning their mortgage loan. Additionally, Plaintiffs incurred attorney's fees, costs, and other incidental costs, in having to follow up on Rushmore's payment history, which contained unclear, inaccurate, and inconspicuous information. Plaintiffs also suffered the imminent risk of having to pay an illegal amount.

100.    As a result of Rushmore's violation of 15 U.S.C. § 1692e, Plaintiffs are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

**COUNT VI AS TO RUSHMORE'S VIOLATION OF**
**THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**

101.    Plaintiffs re-allege and incorporate paragraphs 1 through 75 by reference herein.

102.    Rushmore directly, and indirectly through RAS, attempted to collect an illegitimate debt and enforced, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when RAS, on behalf of Rushmore, attempted to collect fees not owed. *Id.* § 559.72(9).

103.    Rushmore, as a sophisticated mortgage loan servicer regularly engaged in the mortgage loan servicing industry, knew it could only charge fees actually incurred, and not "estimated" fees, because the Eleventh Circuit, in *Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015), provided express guidance on the issue more than three years prior to the date Rushmore, through RAS, sent the payoff letter to Plaintiffs.

104.    Rushmore also knew it could only charge fees incurred or disbursed because, following the *Prescott* decision, the media and trade publications issued numerous warnings against using "estimated" fees not incurred in reinstatement or payoff letters, especially in the Eleventh Circuit.

105.    Rushmore was also put on notice of its requirements to only charge fees incurred through the many complaints to the CFPB by consumers that Rushmore charged fees not owed, discussed *supra*.

106.    By charging estimated fees tacked on to the payoff letter, and failing to provide information in an accurate, clear and conspicuous manner, Rushmore frustrated Plaintiff's ability to permanently modify their loan and caused Plaintiffs to incur further attorney's fees and costs in connection with defending the foreclosure action and responding to the inaccurate and unclear information. Plaintiffs also suffered the imminent risk of having to pay an illegal amount not owed.

107.    As a result of Rushmore's violation of the FCCPA, Plaintiffs are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable

attorney's fees and costs.

## COUNT VII AS TO CARLSBAD'S VIOLATION OF
## THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)

108.     Plaintiffs re-allege and incorporate paragraphs 1 through 75 by reference herein.

109.     Carlsbad is a "person" as defined under the FCCPA.

110.     Carlsbad, through its trustee Wilmington, as a sophisticated mortgage lender regularly engaged in the mortgage loan industry, knew it could only charge fees actually incurred, and not "estimated" fees, because the Eleventh Circuit, in *Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015), provided express guidance on the issue more than three years prior to the date RAS sent the payoff letter to Plaintiffs.

111.     Carlsbad, through its trustee Wilmington, also knew it could only charge fees incurred because, following the *Prescott* decision, the media and trade publications issued warnings against using "estimated" fees not incurred in reinstatement or payoff letters, especially in the Eleventh Circuit.

112.     Rushmore's and RAS' knowledge can also be imputed to Carlsbad through principles of agency. *See, e.g.*, *Compass Bank v. Tania Lynn Vanpelt*, No. CA10-1624 (Fla. Cir. Ct. April 2, 2015) (finding knowledge under the FCCPA could be imputed from agents to the owner of the mortgage note and holder through principles of agency).

113.     By charging estimated fees tacked on to the reinstatement amount, and failing to provide information in an accurate, clear and conspicuous manner, Carlsbad frustrated Plaintiff's ability to modify their loan and caused them to incur further attorney's fees and costs in connection with defending the foreclosure action and responding to the inaccurate and unclear information. Plaintiffs also suffered the imminent risk of having to pay an illegal amount not owed.

114.     As a result of Carlsbad's' violation of the FCCPA, Plaintiffs are entitled to actual

damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

## COUNT VIII - Failure to Provide Timely Payoff Statement in Violation of Regulation z, Section 12 C.F.R. 1026.36(c)(3), TILA, 15 U.S.C 1639(g)

115.    Plaintiffs re-allege and incorporates paragraphs 1 through 75 by reference herein.

116.    Regulation Z, Section 1026.36(c)(3) states that "a creditor, assignee or servicer "… must provide an accurate statement of the total outstanding balance that would be required to pay the consumers obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer." 12 C.F.R – 1026.36(c)(3).

117.    Plaintiffs sent Defendants a written request for a payoff on December 10th, 2018.

118.    On January 10, 2019, Plaintiffs sent Defendants another written request for a payoff.

119.    Over one month later, two written requests and several telephonic requests, on January 18, 2019, the Defendants provided the Plaintiffs with the requested payoff.

120.    Defendants failed to respond with the timeline set forth by -1026.36(c)(3) and are therefore in violation of Regulation Z and TILA. See also 15 U.S.C 1639(g)("[a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.").

121.    Accordingly, Plaintiffs are entitled to statutory damages in the amount of $4,000 each as a result of Defendants violation in connection with a "credit transaction not under an open end credit plan that is secured by real property or dwelling … 15 U.S.C  1640(a)(1)-(2).

## JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

122.    Plaintiffs are entitled to and respectfully demands a trial by jury on all issues so

triable.

123.    Plaintiffs reserve the right to amend their Complaint and add a claim for punitive damages.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs, respectfully request this Court to enter judgment against Defendants for all of the following:

a.   That Plaintiffs be awarded actual damages;
b.   That Plaintiffs be awarded statutory damages for each of Plaintiff's claims;
c.   That Plaintiffs be awarded costs and attorney's fees;
d.   That the Court enter a judgment permanently enjoining Defendants from charging and/or collecting debt in violation of the FDCPA, FCCPA, and RESPA;
e.   That, should the Court permit Defendants to continue charging and/or collecting debt, it enter a judgment requiring them to adopt measures to ensure FDCPA, RESPA, and FCCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that Defendants comply with those measures;
f.   That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the FDCPA, RESPA, and the FCCPA;
g.   Such other and further relief as the Court may deem just and proper.

Dated this 25th day of November 2019.

Respectfully submitted,
**Amador & Cuellar, PLLC.**
7340 SW 90TH STREET
MIAMI, FL 33156
TEL. (305) 901-3337
FAX. (305) 647-0669
SERVICE EMAIL: efiling@aclawoffices.net

BY: /s/ *Abbie B.Cuellar*
ABBIE B. CUELLAR, ESQ.
FLORIDA BAR NO. 97756
MONICA AMADOR, ESQ.
FLORIDA BAR NO.  29994

Prepared by or under the supervision of:
THERESA SAILER

*[Name of Natural Person]*
4010 BOY SCOUT BLVD. SUITE 600

*[Street Address]*
TAMPA, FL 33607

*[City, State Zip Code]*

After recording please return to:
INDYMAC BANK, F.S.B., C/O DOCUMENT
MANAGEMENT
*[Company Name]*

*[Name of Natural Person]*
BLDG B, 901 E 104TH ST, SUITE 400/500

*[Street Address]*
KANSAS CITY, MO 64131

*[City, State Zip Code]*

CFN 2007R1027451
OR Bk 26005 Pgs 0911 - 925; (15pgs)
RECORDED 10/23/2007 14:35:57
MTG DOC TAX 875.00
INTANG TAX 500.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

———————————— *[Space Above This Line For Recording Data]* ————————————

# MORTGAGE

## DEFINITIONS

MIN: 100055401279411658

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**  **"Security Instrument"** means this document, which is dated      October 12, 2007      , together with all Riders to this document.

**(B)**  **"Borrower"** is  FRANCISCO ROCHE AND SONNY C ROCHE HIS WIFE

Borrower is the mortgagor under this Security Instrument.

**(C)**  **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: ▓▓▓▓ 1165

10-31597

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 14

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.



(D)    "Lender" is INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a Federal Savings Bank   organized and existing under the laws of United States of America   Lender's address is   155 NORTH LAKE AVENUE, PASADENA, CA 91101

(E)    "Note" means the promissory note signed by Borrower and dated   October 12, 2007   . The Note states that Borrower owes Lender   two hundred fifty thousand and NO/100ths Dollars (U.S. $ 250,000.00   )

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   November 1, 2037

(F)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider                  ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Revocable Trust Rider
☐ Other(s) [specify]

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions; transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)    "Escrow Items" means those items that are described in Section 3.

(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

Loan No:     1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 2 of 14
MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

County        of        MIAMI-DADE

*[Type of Recording Jurisdiction],*     *[Name of Recording Jurisdiction]*

which has a legal description of:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of       7200 SW 100TH AVE

*[Street]*

MIAMI       ,   Florida    33173

*[City]*          *[Zip Code]*

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Loan No: ███████1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

—THE COMPLIANCE SOURCE, INC.—         Page 3 of 14         MERS Modified Form 3010 01/01

www.compliancesource.com                                                14301FL 11/04

                                                             © 2004, The Compliance Source, Inc.



Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under

Loan No: ████1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com                    Page 4 of 14

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.





RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

Loan No:     1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                     Page 5 of 14
www.compliancesource.com

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc





or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Loan No:  1165

Florida Mortgage–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.—                                      Page 6 of 14
www.compliancesource.com

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.



Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Loan No: �these▬1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                 Page 7 of 14
www.compliancesource.com

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.





Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b).  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

Loan No:  [redacted] 1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 8 of 14

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.



If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's

---

Loan No:  1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                    Page 9 of 14
www.compliancesource.com

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.



acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more

Loan No:        1165



of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

    **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

    Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products; toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

    Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Loan No: [redacted] 1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
---THE COMPLIANCE SOURCE, INC.---                        Page 11 of 14                MERS Modified Form 3010 01/01
www.compliancesource.com                                                                                14301FL 11/04
                                                                                              © 2004, The Compliance Source, Inc.





NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Loan No: █████ 1165

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                               Page 12 of 14
www.compliancesource.com

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Witnesses:

_____

_Teresa Sonare_

_____ (Seal)
FRANCISCO ROCHE                           -Borrower
                                          [Printed, Typewritten, or, Stamped Name]

Printed, Typewritten, or Stamped Name:

Post-Office Address:  7200 SW 100TH AVE, MIAMI, FL 33173

_Veronica Riven_

_____ (Seal)
SONNY  ROCHE                              -Borrower
                                          [Printed, Typewritten, or, Stamped Name]

Printed, Typewritten, or Stamped Name:

Post-Office Address:  7200 SW 100TH AVE, MIAMI, FL 33173

_____ (Seal)
                                          -Borrower
                                          [Printed, Typewritten, or, Stamped Name]

Post-Office Address:

_____ (Seal)
                                          -Borrower
                                          [Printed, Typewritten, or, Stamped Name]

Post-Office Address:

Loan No: ███████1165

Florida Mortgage-Single Family-Fannie Mac/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                        Page 13 of 14
www.compliancesource.com

MERS Modified Form 3010 01/01
14301FL  11/04
© 2004, The Compliance Source, Inc.

State of ___Florida___ §
County of ___Dade___ § §

The foregoing instrument was acknowledged before me this ___101307___
*[date]* by  FRANCISCO ROCHE  and  SONNY C ROCHE

who is personally known to me or who has produced ___Dr. license___ *[name of person acknowledging]*,
*[type of identification]* as identification.

_____
Signature of Person Taking Acknowledgment

VERONICA RIVERO
MY COMMISSION #DD383331
EXPIRES: JAN 03, 2009
Bonded through 1st State Insurance

_____
Name Typed, Printed or Stamped

_____
Title or Rank

_____
Serial Number, if any

Loan No: ████1165
**Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.—                    Page 14 of 14                    MERS Modified Form 3010 01/01
www.compliancesource.com                                                         14301FL 11/04
                                                                                 © 2004, The Compliance Source, Inc.



OR BK 26005 PG 0925
LAST PAGE

**Exhibit "A"**

Lot 1, Block 16, of HEFTLER HOMES SUNSET PARK SECTION ONE, according to the Plat thereof, as recorded in Plat Book 70, Page 24, of the Public Records of Dade County, Florida, together with a strip of land lying North of the North boundary line of Lot 1, Block 16, of HEFTLER HOMES SUNSET PARK SECTION ONE, according to the Plat thereof, as recorded in Plat Book 70, Page 24, of the Public Records of Dade County, Florida; and South of the South line of the 5 feet Planting Strip South of the South Right-of-Way line of SW 72 Street as shown along said plat of HEFTLER HOMES SUNSET PARK SECTION ONE; and between the Northwesterly projection of the Easterly boundary line of said Lot 1, Block 16, and the Northwesterly projection of the Westerly boundary line of said Lot 1, Block 16, and the area at the Northeasterly corner of said Lot 1, Block 16, between the Westerly Right-of-Way line of SW 100 Avenue and the Northeasterly projection of the Northerly boundary line of said Lot 1, Block 16, and the arc of the 25 feet radius return of circular curve tangent to said Westerly Right-of-Way line and said Northeasterly projection of said Northerly line of said Lot I, Block 16.

# NOTE

ORIGINAL

October 12, 2007          MIAMI                    Florida
[Date]                    [City]                   [State]

7200 SW 100TH AVE, MIAMI, FL 33173
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 250,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is     INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK                      . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.750      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the     1st     day of each month beginning on      December,  2007     . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     November  1, 2037     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     INDYMAC BANK, F.S.B., P.O. BOX 78826, PHOENIX, AZ 85062-8826

                                                      or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $     1,621.50

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Loan No:   ████ 1165                                          MIN: 100055401279411658

Florida Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3210 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 1 of 3                     12601FL 08/00
www.compliancesource.com                                                    ©2000, The Compliance Source, Inc.



EXHIBIT

"B"

1C-31597

**5.**   **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.**   **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.**   **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.**   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.**   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.**   **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same

Loan No: ███████1165

Florida Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                                    Page 2 of 3
www.compliancesource.com

Form 3210 01/01
12601FL 08/00
©2000, The Compliance Source, Inc.

date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11. **DOCUMENTARY TAX**
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HANDS AND SEALS OF THE UNDERSIGNED.

_____ (Seal)
FRANCISCO ROCHE        -Borrower

_____ (Seal)
SONNY C ROCHE         -Borrower

_____ (Seal)
         -Borrower

_____ (Seal)
         -Borrower

*[Sign Original Only]*

Pay To The Order Of

Without Recourse
IndyMac Bank, F.S.B.
By:

Gail Doyle
First Vice President

Loan No: ████1165

Florida Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—          Page 3 of 3          Form 3210 01/01
www.compliancesource.com                                   12691FL 08/00
                                                   ©2000, The Compliance Source, Inc.

**IndyMac Mortgage Services**
a division of OneWest Bank
PO Box 4045
Kalamazoo, MI 49003-4045

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!
OCWEN.MORTGAGEBANKSITE.COM



O C W E N

08/12/2013



FRANCESCO  ROCHE
SONNY C ROCHE
7200 SW 100th AVE
MIAMI FL  33173-4636

Ocwen Loan #: ████1786
Prior Loan #: 1010558334
Property Address: 7200 100TH AVE
MIAMI FL 33173

## NOTICE OF SERVICING TRANSFER (RESPA) and
## WELCOME TO OCWEN LOAN SERVICING, LLC

Dear Customer(s):

Effective 09/01/2013, IndyMac Mortgage Services, a division of OneWest Bank, FSB (IndyMac) will transfer the servicing of your mortgage loan to Ocwen Loan Servicing, LLC (Ocwen). The transfer of the servicing of your loan does not affect any term or condition of your mortgage contract, other than terms directly related to the servicing of your account. Your account number will change, and the new account number is noted above. Key information regarding the servicing of your account is provided below.

Should you have questions relating to the transfer of servicing or need information regarding your account prior to 09/01/2013, please contact IndyMac's Customer Call Center at (800) 781-7399.

New Servicer Contact Information:
As of 09/01/2013, Ocwen's Customer Care Center will assist you with questions regarding the transfer of servicing or any other questions relating to your account. You may reach Ocwen's Customer Care Center at (800) 766-4622, Monday through Friday 6:00 a.m. - 10:00 p.m. CT or Saturday 8:00 a.m. - 2:00 p.m. CT. Information concerning Ocwen and your mortgage loan may also be found online at OCWEN.MORTGAGEBANKSITE.COM. You can also obtain information using Ocwen's Automated Telephone system or by speaking with a Customer Care Center Representative. Please be sure to have your account number available when you call.

As of 09/01/2013, all written inquiries should be sent to Ocwen at the following address. Please be sure to indicate your account number on all correspondence to ensure prompt response to your inquiry.

> Ocwen Loan Servicing, LLC
> Attn: Customer Service Department
> PO Box 780
> Waterloo, IA 50704-0780

Making Payments:
**The date that IndyMac will stop accepting a payment from you is 08/30/2013. The date that Ocwen will start accepting payments from you is 09/01/2013. Please make all checks payable to Ocwen and send all payments due on or after 09/01/2013. If you use a Bill Pay Service, you will also need to inform them of this new payment address.**

For Western Union Quick Collect users, you can find the location nearest to you by calling (800) 238-5772 or visiting www.westernunion.com and clicking on "Find a Location". At the location, please pay to name "OCWEN", the Code City, State, and provide the Loan Number.

**ACH (Automated Payments) or One-time Web Payments**
Automatic monthly payments or one-time web payments can be setup and managed from our website at
OCWEN.MORTGAGEBANKSITE.COM.

| Western Union Quick Collect | MoneyGram® | Check Payment Via Regular Mail |
|---|---|---|
| Code City: HOME | Receiver Code: 2365 | Address: |
| State: IOWA | Payable To: OCWEN LOAN SERVICING, LLC | OCWEN LOAN SERVICING, LLC |
| Reference: OCWEN LOAN NUMBER: | Reference: OCWEN LOAN NUMBER: | PO BOX 9001719 |
| 71961786 | 71961786 | LOUISVILLE, KY 40290-1719 |
| Agent Locator: (800) 325-6000 | Agent Locator: (800) 926-9400 | |
| | | Please be sure to always include your Ocwen loan number with your payment. |

If you are currently enrolled in IndyMac's automated payment program (ACH) and your monthly payments are automatically withdrawn from your bank account, the service will continue with Ocwen.

Ocwen NMLS #1852
IndyMac NMLS #541760


EXHIBIT
"C"



*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

## NOTICE OF SERVICING TRANSFER (RESPA) - Page 2

**Taxes and Insurance:**

If you are currently responsible for payment of your real estate taxes and/or homeowners insurance, you will continue to be responsible for payment of these items after your account transfers to Ocwen. To ensure our records accurately reflect your insurance carrier and taxing authority, you may receive a letter of verification from Ocwen shortly after the transfer.

Additionally, it is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance (with flood and/or windstorm coverage, as applicable) on your property and (ii) Ocwen is named as the beneficiary in the Mortgagee Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

| INSURANCE | PROPERTY TAXES |
|---|---|
| Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| ISAOA | Attn: Tax Department |
| PO Box 4025 | PO Box 961219 |
| Coraopolis, PA 15108 | Fort Worth, TX 76161-0219 |
| Insurance Center: (800) 256-9962 | Customer Care Center: (877) 261-5760 |
| Insurance Center Fax: (866) 336-9021 | |

**Year-end Interest Statement (IRS Form 1098):**

By January 31 of each year, you will be mailed an Annual Tax and Interest Statement from each company that has serviced your loan during the prior year. Each statement will contain IRS reporting information for the time your loan was serviced by each servicer.

**Optional Insurance:**

The transfer of servicing rights may affect the terms of, or the continued availability of mortgage life, disability insurance, or any other type of optional insurance. Not everyone has this type of insurance, but if you do, please be advised that it may not transfer to Ocwen Loan Servicing, LLC. Unless you are notified in writing by Ocwen, your insurance will transfer with your loan.

Except in limited circumstances, the law requires that your present Servicer send you this notice at least fifteen (15) days before the effective date of transfer. Your new Servicer must also send you this notice no later than fifteen (15) days after this effective date. In this case, all necessary information is combined in this one notice.

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new loan Servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC 2605) gives you certain consumer rights. If you should need to send a "qualified written request" to your loan Servicer concerning the servicing of your loan, your Servicer must provide you with a written acknowledgement within five (5) business days of receipt of your request. A "qualified written request" is defined as a written correspondence, other than notice in a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to:

| If to IndyMac: | If to Ocwen: |
|---|---|
| IndyMac Mortgage Services | Ocwen Loan Servicing, LLC |
| Attn: Correspondence Research | Attn: Research Department |
| P.O. Box 4045 | PO Box 780 |
| Kalamazoo, MI 49003-4045 | Waterloo, IA 50704-0780 |

Not later than thirty (30) business days after receiving your request, your Servicer must make appropriate corrections to your account and provide you with a written clarification regarding any dispute, or in some circumstances, a notice of a fifteen (15) business day extension. During this period, your Servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the Servicer from initiating foreclosure if proper grounds exist under the mortgage documents. A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where Servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated. Please retain this information with your financing agreement documentation. We look forward to working with you and providing you with the highest quality customer care service.

**Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt: any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.**

**IndyMac is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If you are not obligated on the debt or if the debt has been discharged in a bankruptcy proceeding, this is for informational purposes only and is not an attempt to assess or collect the debt from you personally.**

**Attention Service members and Dependents: The federal Service members Civil Relief Act and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances during and nine months after the service member's military or other service. IndyMac will not foreclose on the property of a service member or his or her dependent during that time, unless pursuant either to a court order or a service member's written waiver agreement.**

*This communication is from a debt collector attempting to collect a debt: any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

## General Account & Loan Payments

**What if I made a payment to my IndyMac, but it has not posted yet?**

IndyMac will forward your payment to us within 15 business days. It may take a few days for us to receive and apply the payments, but this will not negatively impact your account or your credit report. To check on the status of your account, you may go to OCWEN.MORTGAGEBANKSITE.COM.

**How can I get information about my account?**

You can access Ocwen's website and/or automated telephone system which will provide you with information regarding your account 24 hours a day. These systems have been designed to provide you with the most frequently requested services or information. This includes, but is not limited to, options to obtain payment histories, a payoff quote, payment options, status of tax and insurance payments, financial hardship options and frequently asked questions (FAQ). Website: OCWEN.MORTGAGEBANKSITE.COM. Telephone Number: (800) 766-4622.

**If my account is past due and I have not made a payment arrangement with IndyMac, how can I make payment arrangements or get assistance due to financial difficulties?**

We offer a number of specialized programs designed to assist borrowers who are past due. Please go to OCWEN.MORTGAGEBANKSITE.COM, click on the Help for Homeowners section for information or financial analysis forms.

**If my account is current, where do I send my payments?**

| Payment Processing Address: | For Overnight Express Payments: |
| Ocwen Loan Servicing, LLC | Attn: Payment Processing Center |
| PO Box 9001719 | 6716 Grade Lane Building 9, Suite 910 |
| Louisville, KY 40290-1719 | Louisville, KY 40213-1407 |

**Are there any special requirements for hazard insurance?**

It is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance on your property (with flood and/or windstorm coverage, as applicable) and (ii) Ocwen is named as the beneficiary in the Mortgage Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

| **INSURANCE** | **PROPERTY TAXES** |
| Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| ISAOA | Attn: Tax Department |
| PO Box 4025 | PO Box 961219 |
| Coraopolis, PA 15108 | Fort Worth, TX 76161-0219 |
| Insurance Center: (800) 256-9962 | Customer Care Center: (877) 261-5760 |
| Insurance Center Fax: (866) 336-9021 | |

## Mortgage Modifications

**I am currently on a trial modification plan and still have payments remaining before it becomes a final/permanent modification. What do I do?**

You should continue making your monthly payments as required in the modification plan. IndyMac will be providing Ocwen the status of your modification. Please allow 30 days to review and process your information. It is not necessary to call for a status prior to 30 days, as the agent will not have any additional information to provide you.

**How do I contact my relationship manager?**

To contact your relationship manager contact our Customer Care Center at (800) 766-4622 and request an appointment with your Relationship Manager.

**I just submitted my modification application to IndyMac. Should I send this to Ocwen again?**

IndyMac will provide Ocwen with the status of your modification application and copies of your documentation. It is not necessary to re-send the documents to Ocwen at this time. Please allow up to 30 days from the date of the account transfer for Ocwen to process your application documentation and determine your eligibility. It is not necessary to call prior to 30 days as the agent will not have any additional information to provide to you.

**I received a notice from IndyMac that I was denied for the Making Home Affordable Program. I am still having financial difficulty; what can I do?**

We may still be able to help you. We offer a number of specialized programs designed to assist borrowers who are past due. Please go to OCWEN.MORTGAGEBANKSITE.COM for more information and to download an application for assistance.

**I received a notice from IndyMac that they were missing documents for my modification but I have not sent them yet; do I send these documents to Ocwen now?**

Yes, please send the documents to Ocwen via e-mail at FINANCIAL.PACKAGE@OCWEN.COM or fax the documents to (866) 709-4744. IndyMac will be providing Ocwen with the status of your modification (trial plan or initial application), copies of your initial application and information identifying the missing documentation. Please allow up to 30 days from the date you send the documentation for Ocwen to process your documentation.

## Short Sale & Deed in Lieu

**I have a Short Sale or Deed in Lieu application pending with IndyMac. Do I have to resend all the documentation to Ocwen now and re-apply?**

If you have a pending foreclosure sale date or closing scheduled in the next 60 days, please resend the documentation by fax to (866) 709-4744 to expedite processing. If you do not have a foreclosure sale or scheduled closing in the next 60 days, IndyMac will provide Ocwen the status of your pending resolution. Ocwen will be contacting you with a final approval or denial. Please allow Ocwen 30 days to process your Short Sale or Deed in Lieu application.

**I received approval from IndyMac for a Short Sale or Deed in Lieu; will this approval be honored by Ocwen?**

Yes, it will be honored as long as you meet the original requirements or contingencies for approval provided by IndyMac. With respect to Short Sales, please note that the original expiration date of IndyMac's approval (the "good through" date) still applies, if it has expired, the approval is no longer valid. IndyMac will be providing these approval requirements to Ocwen.

**I received approval from IndyMac for a Short Sale or Deed in Lieu, but the approval will expire shortly (or just expired) and my closing is after this day. What do I do?**

You should fax your original approval documents and an updated net sheet or HUD1 with the projected closing date to (866) 709-4744. With respect to Short Sales, please note the original expiration date of IndyMac's approval (the "good through" date) still applies. If there is a Foreclosure Sale scheduled on your account, we will not postpone the foreclosure sale.



This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

**Important Information About This Transfer**

You should also be aware of the following information which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. Section 2605). During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new Loan Servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA also gives you certain consumer rights. If you send a "qualified written request" to Ocwen Loan Servicing (Attention Customer Service Department, PO Box 780, Waterloo, IA 50704-0708) concerning the servicing of your loan, Ocwen must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is defined as a written correspondence, other than notice on a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number and your reasons for the request. A "business day" is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Not later than 60 business days after receiving your request, Ocwen must make the appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business-day period, Ocwen may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent Ocwen from initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides for damages and costs for individuals in circumstances where servicers are shown to have violated this section. You should seek legal advice if you believe your rights have been violated.

Disclaimer Regarding Mandatory Arbitration Provisions: If your account documents require you to submit disputes regarding your account to arbitration for resolution, such requirement is waived and will not be enforced against you. Such waiver, however, does not affect any rights you may have to require arbitration of disputes regarding your account.

Credit Reporting: You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may also be reflected on your credit report.

Identity Theft Notice: If you would like to obtain information regarding identity theft, you may contact the Federal Trade Commission at www.ftc.gov/bcp/edu/microsites/idtheft/ OR by calling 1-877-ID-THEFT (1-877-438-4338).

Properties in California: The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 am or after 9 pm. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason that you may not receive personals calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may not contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at (877) FTC-HELP or www.ftc.gov.

Properties in Colorado: For information about the Colorado Fair Debt Collection Practices Act, see www.ago.state.co.us/cab.htm. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

Properties in Hawaii: Ocwen Loan Servicing, LLC is licensed by the Commissioner of Financial Institutions in Hawaii. Complaints and inquiries about the servicer may be submitted to the Commissioner.

Properties in Maryland: The Maryland Consumer Protection Act require us to disclose that if Ocwen fails to give written notice of this transfer or fails to make timely payments of taxes or insurance premiums (assuming the borrower has paid an amount to cover these costs) and Ocwen has received the tax bill or notice, Ocwen may face liability for any economic damages incurred by the borrower.

Properties in Minnesota: Borrowers on loans secured by property in Minnesota can direct complaints and inquiries and questions to the Ocwen Loan Servicing, LLC. Customer Care Department at (800) 746-2936 between 8:00 a.m. and 9:00 p.m. RT, Monday through Friday, from 8:00 a.m. to 5:00 p.m. RT on Saturday, or from 9:00 a.m. to 9:00 p.m. RT on Sunday or in writing to P.O. Box 24738, West Palm Beach, FL 33416-4738. Each written complaint or question will be responded to within 15 days.

Properties in New York: Ocwen Loan Servicing, LLC is registered with the Superintendent of the New York State Banking Department. The borrower may file complaints and inquiries about Ocwen Loan Servicing, LLC with or obtain further information from the New York State Banking Department by calling the Department's Consumer Help Unit at 1-877-BANK-NYS or by visiting the Department's website at www.banking.state.ny.us.

Properties in North Carolina: Ocwen Loan Servicing, LLC is licensed by the North Carolina Commissioner of Banks (North Carolina Permit No. 3946) and complaints and inquiries about Ocwen Loan Servicing, LLC may be submitted to the Commissioner.

Properties in Texas: The State of Texas requires us to inform you that a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan: Complaints and inquiries regarding the servicing of your mortgage should be sent to the Department of Savings and Mortgage Lending, 2601 N. Lamar, Suite 201, Austin, Texas 78705. Complaint Forms and Instructions may be downloaded and printed from the Departments website located at http://www.sml.state.tx.us or obtained from the Department upon request by mail at the address above, by telephone at its Toll-free Consumer Hotline at (877) 276-5550, by fax at (512) 475-1360, or by email at SML.info@SML.STATE.TX.US.

Attention Servicemembers and Dependents: The federal Service members Civil Relief Act and certain state laws provide important protection for you, including exceptions to foreclosure during military service and a period thereafter as provided by federal law.

IndyMac is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If you are not obligated on the debt or if the debt has been discharged in a bankruptcy proceeding, this is for informational purposes only and is not an attempt to assess or collect the debt from you personally.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*



P.O. Box 55004
Irvine, CA  92619-2708
888.669.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

Francisco  Roche
Sonny C Roche

7200 SW 100th Ave
Miami, FL 33173-4636

**Your New Loan Number:** ▮▮▮6680
**Property Address:**           7200 SW 100TH AVE
                                MIAMI, FL  33173

## NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING

Dear Mortgagor(s):

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from Seterus, Inc. to Rushmore Loan Management Services LLC (Rushmore), effective 05/01/2016. The transfer of the servicing of your mortgage does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your previous servicer send you this notice at least 15 days before the effective date of transfer. As your new servicer, we must also send you this notice no later than 15 days after this effective date or at closing.

Your previous servicer was Seterus, Inc.. If you have any questions regarding the transfer of servicing from your previous servicer, call Seterus, Inc. Customer Service at 866-570-5277 between Monday ☐ Thursday, 5:00 am to 8:00 pm PT, Friday, 5:00 am to 6:00 pm PT  This is a toll free number.

**Rushmore will be your new servicer. The business addresses for your new servicer are as follows:**

**Correspondence Address**
**Rushmore Loan Management Services LLC**
**15480 Laguna Canyon Rd., Suite 100**
**Irvine, CA 92618**

**Payment Address**
**Rushmore Loan Management Services LLC**
**P.O. Box 514707**
**Los Angeles, CA 90051-4707**

If you have any questions related to the transfer of servicing to Rushmore, call our Customer Service Department at 888-504-6700 between Monday through Thursday, 6 a.m. to 7 p.m., Friday 6 a.m. to 6 p.m. Pacific. Please have your new loan number shown above available when calling.

Rushmore offers several convenient ways to make your monthly payment. You can make your payment by phone at 888-504-6700 or through our website at **www.rushmorelm.com**. Click on the upper banner called **ACCOUNT LOGIN** and you can make a Payment or sign-up for **Auto Draft Payments**. Rushmore highly recommends this option, as it helps prevent you being late on any of your very important mortgage payments.

The date that your present servicer Seterus, Inc. will stop accepting your payments is 04/30/2016. The date that Rushmore will begin accepting payments from you is 05/01/2016. Send all payments due on or after that due date to your new servicer. A billing statement from Rushmore will be mailed to you within 15 to 30 days.

3



If you are currently making your mortgage payment through a third- party entity (e.g., government allotment, biweekly, or bill service), please take the necessary steps to advise them of your new loan number shown above and change the payee to your new servicer. In the event of a payment change, it is your responsibility to notify the third-party of the new payment amount and new address to send the payments.

**Important note:** If you entered into an approved loss mitigation plan with you prior loan servicer, or if you had a loss mitigation application in process with your prior servicer, please call Rushmore immediately, toll-free, at 888-504-7300, to confirm that the loss mitigation plan information, or application and documentation, were properly transferred to Rushmore.

You should also be aware of the following information, which is referred to in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC §2605).

During the 60-day period following the effective date of transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new servicer as late, and a late charge fee may not be assessed.

Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way:

Rushmore does not collect and remit any type of optional insurance to your insurance company. Any premiums for any such optional policy that was being collected and remitted by your prior servicer will be discontinued by Rushmore as of the effective date of the transfer of servicing. If you wish to retain such optional insurance, you should contact your optional product service provider about your ability to continue such insurance and how to make premium payments.

**Notice of Error Resolution & Information Request Procedures**
The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC. (RLMS). Please keep this document for your records.

If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:

**Rushmore Loan Management Services LLC**
**Compliance Department**
**P.O. Box 52262**
**Irvine, California 92619**

All written requests for information or notices of error should contain the following information:
1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error OR a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**Please keep this document for your records.**

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Should you have any questions, please contact our Customer Service Department at toll-free 888-504-6700, Monday through Thursday, 6 a.m. to 7 p.m., Friday 6 a.m. to 6 p.m. Pacific.

Sincerely,

Rushmore Loan Management Services LLC

4

CFN: 20160494419 BOOK 30203 PAGE 2441
DATE:08/24/2016  08:32:27 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

Recording Requested By:
**T.D. SERVICE COMPANY**

Prepared By:
**T.D. Service Company**
**LR Department**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA  92868**
**(714) 543-8372, SUSAN S THACH**

And When Recorded Mail To:
**T.D. Service Company**
**LR Department (Cust# 671)**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA  92868**

Customer#: 671/1
Service#: 4400272ASI
Loan#: ▓▓1766

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, FEDERAL NATIONAL MORTGAGE ASSOCIATION, 13150 WORLDGATE DRIVE, HERDON, VA  20170-0000, hereby assign and transfer to WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR CARLSBAD FUNDING MORTGAGE TRUST, 500 DELAWARE AVENUE 11TH FLOOR, WILMINGTON, DE  19801-0000, all its right, title and interest in and to said Mortgage in the amount of $250,000.00, recorded in the State of FLORIDA, County of MIAMI-DADE Official Records, dated OCTOBER 12, 2007 and recorded on OCTOBER 23, 2007, as Instrument No. —, in Book No. 26005, at Page No. 911.
Executed by: FRANCISCO  ROCHE AND SONNY C. ROCHE (Original Mortgagor).
Original Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., AS NOMINEE FOR INDYMAC BANK FSB, ITS SUCCESSORS AND ASSIGNS.

Date: 6/17/16

FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS ATTORNEY IN FACT

By: (Name,Title):  **Drew Edwards**
                   Assistant Vice President

WITNESS:

(Name):  **Stacey Burdett**

(Name):  Brooke Ewing



**EXHIBIT**
"E"

CFN: 20160494419 BOOK 30203 PAGE 2442

Loan#: ███ 766    Srv#: 4400272AS1
Page 2

State of      **TEXAS**                          )
County of     **DALLAS**                         } ss.

On ⌞6⌟17⌞16⌟____ before me, the undersigned officer, a Notary Public, personally appeared
____Drew Edwards_____ , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

Notary Public
My commission expires:  ____**APR 0 8 2017**____

BRADLEY J. GORZ
Notary Public, State of Texas
My Commission Expires
April 08, 2017

Rushmore Loan Management Services
15480 Laguna Canyon Drive, Suite 100
Irvine, CA  92618

April 22, 2016

FRANCISCO . ROCHE                    1284
SONNY C ROCHE

7200 SW 100TH AVE
MIAMI, FL 33173-4636



EXHIBIT

"F"

## NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN

Under federal law, borrowers are required to be notified in writing whenever ownership of a mortgage loan secured by their principal dwelling is sold, transferred or assigned (collectively, "sold") to a new creditor. This Notice is to inform you that your prior creditor has sold your loan (described below) to us, the new creditor identified below.

**\*\*NOTE: The new creditor identified below is not the servicer of your loan. The servicer (identified below) acts on behalf of the new creditor to handle the ongoing administration of your loan, including the collection of mortgage payments. Please continue to send your mortgage payments as directed by the servicer, and NOT to the new creditor. <u>Payments sent to the new creditor instead of the servicer may result in late charges on your loan and your account becoming past due. Neither the new creditor nor the servicer is responsible for late charges or other consequences of any misdirected payment.</u>**

**SHOULD YOU HAVE ANY QUESTIONS REGARDING YOUR LOAN, PLEASE CONTACT THE SERVICER USING THE CONTACT INFORMATION SET FORTH BELOW. The servicer is authorized to handle routine inquiries and requests regarding your loan and, if necessary, to inform the new creditor of your request and communicate to you any decision with respect to such request. \*\***

Please note that the sale of your loan to us may also result in a change of servicer. If this occurs, you will receive a separate notice, required under federal law, providing information regarding the new servicer.

---

**LOAN INFORMATION**

Date of Loan: 10/17/2007
Original Amount of Loan: $250,000.00
Date Your Loan was Sold to the New Creditor: 3/30/2016
Loan Number: ███6680
Address of Mortgaged Property: 7200 SW 100TH AVE
                                MIAMI, FL 33173

---

**SERVICER INFORMATION**

Name: **Rushmore Loan Management Services LLC**
Mailing Address:     **15480 Laguna Canyon Road, Suite 100**
                          **Irvine, CA 92618**
Telephone Number (Toll free): **(888) 504-6700**
Website: **rushmorelm.com**

Scope of responsibilities: The servicer is responsible for all ongoing administration of your loan, including receipt and processing of payments, resolution of payment related issues, and response to any other inquiries you may have regarding your loan.

**NEW CREDITOR INFORMATION**

**Please be advised that all questions involving the administration of your loan (including questions related to payments, deferrals, modifications or foreclosures) should be directed to the servicer at the number above and/or the agent (if any) of the new creditor identified below, and not to the new creditor. The new creditor does not have access to information relating to the administration of your loan, and will not be able to answer most loan-related questions.**

Name:                              WILMINGTON SAVINGS FUND
                                   SOCIETY, FSB, D/B/A
                                   CHRISTIANA TRUST, NOT
                                   INDIVIDUALLY BUT AS
                                   TRUSTEE FOR CARLSBAD
                                   FUNDING MORTGAGE TRUST
Mailing Address (**not for payments**):   500 Deleware Ave. 11th Floor
                                   Wilmington, DE 19801

Telephone Number:                  302-888-7448

Scope of responsibilities: As new creditor, the above-named company holds legal title to your loan.  The company  is authorized to receive legal notices and to exercise (or cause an agent on its behalf to exercise) certain rights of ownership with respect to your loan.

**AGENT INFORMATION** (If the new creditor has granted an agent other than the servicer authority to act on its behalf, contact information for such agent will appear below):

Name:
Mailing Address:

Telephone Number:

Scope of responsibilities: Acts as agent for new creditor.

Partial Payments

Your lender

_____   May accept payments that are less than the full amount due (partial payments) and apply them to your loan

__X__   May hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan

_____   Does not accept any partial payments

If this loan is sold, your new lender may have a different policy.

The transfer of the lien associated with your loan is currently recorded, or in the future may be recorded, in the public records of the local County Recorder's office for the county where your property is located.  Ownership of your loan may also be recorded on the registry of the Mortgage Electronic Registrations System at 1818 Library Street, Suite 300, Reston, VA 20190.

Our rights and obligations as new creditor, and consequently our authority to respond favorably to your requests or inquiries may be limited by the terms of one or more contracts related to the servicing of your loan.



P.O. Box 55004
Irvine, CA  92619-2708
888.669.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

May 24, 2016

Francisco . Roche
Sonny C Roche

7200 SW 100th Ave
Miami, FL  33173-4636

Subject: ███████6680

Dear Borrower(s)

According to Rushmore Loan Management Services LLC records, including information that we have received from your prior servicer, the amount of your debt as of 05/01/2016 is provided below.

Current Creditor:  WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR CARLSBAD FUNDING MORTGAGE TRUST
Current Monthly Payment Amount:  $1621.50
Payment Due Date:  03/01/2010

**Summary of Total Debt Composition:**

| Loan Balance, Interest, Escrow and Other Debt: | |
|---|---|
| Current Principal Balance: | $239,717.82 |
| Current Unpaid Accrued Interest | $101130.96 |
| Escrow Balance: | $0.00 |
| Late Charges: | $0.00 |
| NSF Charges: | $0.00 |
| Other Charges: | $19,350.83 |
| Partial Payments Not Yet Applied: | $0.00 |
| **Total Amount of Your Debt:** | **$360,199.61** |

The Total Amount of Your Debt is subject to change as a result of interest and other accruing charges (such as Late Charges, Legal Fees and Costs, and Other Charges).  Please call Rushmore Loan Management Services LLC at 888-504-6700 for a current payoff at the time of any payment.

Pursuant to the Federal Fair Debt Collections Practices Act, if you do not notify us within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume the debt is valid.

If you notify us in writing within 30 days that the debt or any portion thereof is disputed, or if you request the name and address of the original creditor, we will obtain verification of the debt or judgment against you and mail a copy to you and provide you with the name and address of the original creditor.

You should consider this letter as coming from a Debt Collector as we sometimes act as a Debt Collector and any information received will be used for that purpose.  However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

Your dispute letter should be sent to:
**Rushmore Loan Management Services LLC**
15480 Laguna Canyon Road, Suite 100
Irvine, California 92618

If you have any questions regarding this letter, please call us at Toll Free 888-504-6700, Monday through Thursday, 6 a.m. to 7 p.m., Friday 6 a.m. to 6 p.m. Pacific.

Sincerely,
Rushmore Loan Management Service



EXHIBIT
"G"

Rushmore Loan Management Services

MORTGAGE STATEMENT
Statement Date: 06/11/2018

PO Box 52708
Irvine, CA 92619

**Visit our website at** www.rushmorelm.com
**Telephone 888-504-6700**

Francisco Roche
Sonny C Roche
7200 SW 100th Ave
Miami, FL 33173-4636

30238

| | |
|---|---|
| Account Number | ▓6680 |
| Payment Due Date | 07/01/2018 |
| Payments received after the statement date are not reflected | |
| **Amount Due(5)** | **$171,090.53** |
| If payment is received after 07/16/2018, a $81.08 late fee will be charged | |

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

## Account Information

| | |
|---|---|
| Property Address | 7200 SW 100TH AVE<br>MIAMI FL, 33173 |
| Outstanding Principal(3) | $239,717.82 |
| Deferred Balance(2) | $0.00 |
| Interest Rate | 6.75000% |
| Recoverable Advances(4) | $23,025.94 |
| Prepayment Penalty | NO |

| | |
|---|---|
| Principal | $478.53 |
| Interest | $1,142.97 |
| Escrow (for Taxes and Insurance) | $401.45 |
| **Regular Monthly Payment** | **$2,022.95** |
| Total Fees and Charges | $1,297.28 |
| Overdue Payments | $167,770.30 |
| **Total Amount Due** | **$171,090.53** |
| Partial Payment (Unapplied)(1) | $0.00 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)(1) | $0.00 | $0.00 |
| Recoverable Advances(4) | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

(1) **Partial Payment:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
(2) **Deferred Balance:** The amount of your principal balance that is deferred as part of the terms of a loan modification.
(3) **Outstanding Principal:** This is your Loan balance only, not the payoff amount.
(4) **Recoverable Advances:** Disbursements for servicing-related expenses (non-escrow expenses) paid with servicer-funds rather than escrow funds which are recovered from you, the borrower.
(5) **Amount Due: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY**, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

## If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287. Rushmore Loan Management Services is dedicated to providing outstanding loan servicing and customer support through a commitment to uphold ethical and honest business practices. Rushmore is customer-focused and we believe in providing the highest level of customer care. We treat all of our customers with respect, courtesy and integrity. We understand the importance of homeownership, and we recognize that at times economic changes can make it difficult to make your mortgage payment. We encourage our customers to contact us at 888-504-7300 to discuss assistance programs we may have available for you. We also encourage you to contact us to discuss any other issues you may be having with your mortgage. We believe that open and timely communications is a key to our relationship with you. We encourage all of our customers to continue to visit our website (www.rushmorelm.com) to access loan information, make payments, download forms, or obtain answers to questions about your account.



(Keep upper portion for your records)
Please mail so that your payment reaches us by the due date.

| LOAN NUMBER | DUE DATE | AMOUNT DUE | IF REC'D AFTER THIS DATE | LATE PMT AMOUNT |
|---|---|---|---|---|
| ▓6680 | 07/01/2018 | $171,090.53 | 07/16/2018 | $171,171.61 |

| Amount Due(5) | |
|---|---|
| Due By 07/01/2018: | $171,090.53 |
| $81.08 late fee will be charged after 07/16/2018 | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

Francisco Roche
Sonny C Roche
7200 SW 100th Ave
Miami, FL 33173

Make checks payable to:

**Rushmore Loan Management Services LLC**
**P.O. Box 514707**
**Los Angeles, CA 90051-4707**

005128090007012018     6680000021040300002022954

EXHIBIT
"H"
tabbies

**GET LOAN INFORMATION INSTANTLY**
Call our convenient and easy Automated Information Hotline and receive up-to-date loan information. **JUST CALL 1-888-504-6700** from a Touch Tone Phone. For your security, you will need to enter your loan number and the last 4 digits of your social security number when requested. Visit our website at www.rushmorelm.com.

**CUSTOMER SERVICE**
Monday – Thursday
6:00 a.m. to 7:00 p.m. Pacific Time
Friday
6:00 a.m. to 6:00 p.m. Pacific Time
Telephone     (888) 504-6700
Fax              (949) 453-9397

**HOME RETENTION ASSISTANCE**
Telephone     (888) 504-7300
Fax              (949) 341-2236

**PAYOFF STATEMENTS/INFORMATION**
Telephone     (888) 504-6700
Fax              (949) 453-0419

**HAZARD/HOMEOWNERS INSURANCE**
Telephone     (866) 735-2998
Fax              (866) 257-4121

**PROPERTY TAX INFORMATION /ASSISTANCE**
Telephone     (844) 323-3780
Fax              (817) 826-0265

**COLLECTION DEPARTMENT**
Telephone     (888) 504-7200
Fax              (949) 341-2234

**WESTERN UNION QUICK COLLECT**
Code City:    RUSHMORE
Code State:   CA

**WEB SERVICES**
www.rushmorelm.com
General Loan Information
WEB Payment
Home Retention Assistance
Frequently Asked Questions
Forms

**OVERNIGHT PAYMENT ADDRESS:**
Rushmore Loan Management Services
15480 Laguna Canyon Rd , Suite 100
Irvine, California 92618

**SEND TAX BILLS FOR
ESCROWED/IMPOUNDED LOANS TO:**
Rushmore Loan Management Services
P.O. Box 961233
Ft. Worth, TX 76161-0233

**SEND INSURANCE BILLS AND POLICIES TO:**
Rushmore Loan Management Services
P.O. Box 692409
San Antonio, TX 78269-2409

**SEND CORRESPONDENCE TO:**
Rushmore Loan Management Services
Customer Service Department
P.O. Box 55004
Irvine, California 92619-5004

**SEND NOTICE OF ERROR RESOLUTION AND INFORMATION
REQUEST TO:**
Rushmore Loan Management Services
P.O. Box 52262
Irvine, California 92619-2262

**STANDARD FEES**
Returned Check Fee *                    $25.00

* Except where restricted by state law
Other Fees are listed on www.rushmorelm.com

**ANNUAL PRIVACY NOTICE**
Rushmore Loan Management Services LLC provides our Annual Privacy Notice on-line, at our website: www.rushmorelm. com. A copy of the notice will be mailed to customers who request one by contacting our Customer Service Department at 888-504-6700, or by sending a written request to our Customer Service Department at P.O. Box 55004, Irvine, CA 92619-5004. The information in the Notice has not changed from last year.

Important Notice: Under the Fair Credit Reporting Act, you have the right to notify us if you believe we have reported inaccurate information about your account to any Consumer Reporting Agency. Such notices should be sent in writing and include your complete name, current address, social security number, account number, specific item of dispute and reason why you believe the information reported is in error. Send your notice to: P.O. Box 52262, Irvine, CA 92619-2262

**Housing Counselor Resources**
The U.S. Department of Housing and Urban Development (HUD) sponsors non-profit homeownership counseling agencies across the country. Call 800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of HUD-approved agencies in your area.

# MAILING ADDRESS AND PHONE NUMBER CHANGE REQUEST

Mailing Address
_____

City _____   State _____   Zip Code _____

Home Phone Number _____   Business Phone Number _____

**Rushmore Loan Management Services**

PO Box 52708
Irvine, CA 92619

**Visit our website at www.rushmorelm.com
Telephone 888-504-6700**

MORTGAGE STATEMENT
Statement Date: 06/11/2018

Account Number: ████680

## Transaction Activity (12/01/2017 to 06/11/2018)

| Date | Description | Principal | Interest | Escrow | Late Charge | Other | Total |
|------|-------------|-----------|----------|--------|-------------|-------|-------|
| 12/15 | VALUE/PROP INSP COST | | | | | 1.50 | 1.50 |
| 12/15 | VALUE/PROP INSP COST | | | | | 15.00 | 15.00 |
| 12/15 | FC/BK/DIL/EVIC COST | | | | | 115.00 | 115.00 |
| 12/18 | LATE CHARGE ASSESS | | | | 81.08 | | |
| 01/16 | LATE CHARGE ASSESS | | | | 81.08 | | |
| 01/31 | VALUE/PROP INSP COST | | | | | 15.00 | 15.00 |
| 01/31 | VALUE/PROP INSP COST | | | | | 1.50 | 1.50 |
| 02/16 | LATE CHARGE ASSESS | | | | 81.08 | | |
| 03/01 | VALUE/PROP INSP COST | | | | | 15.00 | 15.00 |
| 03/07 | ATTORNEY FEES | | | | | 175.00 | 175.00 |
| 03/07 | ATTORNEY FEES | | | | | 87.50 | 87.50 |
| 03/07 | ATTORNEY FEES | | | | | 87.50 | 87.50 |
| 03/07 | ATTORNEY FEES | | | | | 35.00 | 35.00 |
| 03/07 | ATTORNEY FEES | | | | | 87.50 | 87.50 |
| 03/07 | ATTORNEY FEES | | | | | 175.00 | 175.00 |
| 03/07 | ATTORNEY FEES | | | | | 35.00 | 35.00 |
| 03/07 | ATTORNEY FEES | | | | | 87.50 | 87.50 |
| 03/16 | LATE CHARGE ASSESS | | | | 81.08 | | |
| 03/26 | HAZARD INS | | | -2,364.00 | | | -2,364.00 |
| 03/26 | ESCROW ADVANCE | | | 2,364.00 | | | 2,364.00 |
| 03/29 | VALUE/PROP INSP COST | | | | | 15.00 | 15.00 |
| 04/16 | LATE CHARGE ASSESS | | | | 81.08 | | |
| 04/25 | HAZARD INS | | | -113.00 | | | -113.00 |
| 04/25 | ESCROW ADVANCE | | | 113.00 | | | 113.00 |
| 04/30 | VALUE/PROP INSP COST | | | | | 15.00 | 15.00 |
| 05/14 | ATTORNEY FEES | | | | | 262.50 | 262.50 |
| 05/14 | ATTORNEY FEES | | | | | 175.00 | 175.00 |
| 05/14 | ATTORNEY FEES | | | | | 175.00 | 175.00 |
| 05/16 | LATE CHARGE ASSESS | | | | 81.08 | | |
| 06/04 | LOSS MIT FEE/COST | | | | | 245.00 | 245.00 |
| 06/11 | ATTORNEY FEES | | | | | 250.00 | 250.00 |
| 06/11 | FC/BK/DIL/EVIC COST | | | | | 70.00 | 70.00 |
| 06/11 | FC/BK/DIL/EVIC COST | | | | | 70.00 | 70.00 |

## **Delinquency Notice**

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure - the loss of your home.  As of 06/11/2018, you are 3024 days delinquent on your mortgage loan, dating to 03/01/2010.

Recent Account History

| | | |
|---|---|---|
| * | Payment due 06/01/18: | Unpaid balance of $2,022.95 |
| * | Payment due 05/01/18: | Unpaid balance of $2,022.95 |
| * | Payment due 04/01/18: | Unpaid balance of $2,022.95 |
| * | Payment due 03/01/18: | Unpaid balance of $2,022.95 |
| * | Payment due 02/01/18: | Unpaid balance of $2,022.95 |
| * | Payment due 01/01/18: | Unpaid balance of $2,022.95 |
| * | Payment due 12/01/17: | Unpaid balance of $2,022.95 |
| * | Payment due 11/01/17: | Unpaid balance of $2,022.95 |
| * | Payment due 10/01/17: | Unpaid balance of $2,022.95 |
| * | Payment due 09/01/17: | Unpaid balance of $2,022.95 |
| * | Payment due 08/01/17: | Unpaid balance of $2,022.95 |
| * | Payment due 07/01/17: | Unpaid balance of $2,022.95 |

* **Total: $171,090.53 due.  You must pay this amount to bring your loan current.
IF YOU ARE IN FORECLOSURE OR BANKRUPTCY,** the amount listed here may not be the full amount necessary to bring your account current.  To obtain the most up-to-date amount due information, please contact us at the number listed on this Statement.

**STATE SPECIFIC NOTICES**

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car. Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:

Irvin Borenstein
13111 E. Briarwood Ave. Ste #340
Centennial, CO 80112
Phone: 303-309-3839.

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to Texas residents only:**

Statement: Pursuant to Texas Finance Code Chapter 158.101, a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan.

"COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 North Lamar, Suite 201, Austin, Texas 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550."

**The following notice applies to New York residents only:**

NOTICE PURSUANT TO NEW YORK STATE REGULATION 419

Rushmore Loan Management Services LLC is registered with the Superintendent of Financial Services for the State of New York. A borrower may file a complaint about Rushmore Loan Management Services LLC with the New York State Department of Financial Services. A borrower may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS Unique ID Number 185729
Exempt Mortgage Loan Servicer Registration B501009

**ADDITIONAL NOTICES**

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2242 fax
www.rushmorelm.com

 6680*LM086 N1¦1

December 05, 2018

Francisco Roche
Sonny C Roche
7200 SW 100th Ave
Miami, FL 33173 0000
*

                              LOAN NO.: ████6680
              PROPERTY ADDRESS: 7200 SW 100th Ave
                                Miami FL 33173

    DEAR Francisco Roche :
    DEAR Sonny C Roche :

    Congratulations! You are eligible for a modification. If you comply with
    all the terms of the trial period plan previously sent to you we will
    modify your mortgage loan and waive all prior late charges that remain
    unpaid. The enclosed Modification Agreement reflects the proposed terms
    of your modified mortgage.

                        **HOW TO ACCEPT THIS OFFER:**

    **STEP 1 - COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

    Enclosed are two identical original Loan Modification Agreements that
    we have prepared pursuant to your discussions with your loss mitigation
    representative from Rushmore Loan Management Services LLC. Please review
    the Loan Modification Agreements carefully. If you still wish to modify
    your loan, please sign the documents in black ink and in the presence of
    a notary. You should keep a copy of the modification for your records
    and return one signed original to Rushmore Loan Management Services LLC
    in the envelope provided within 30 days of the date on this
    letter. Please sign your name exactly as it is printed under the
    signature line. If you do not send the signed Modification Agreement to
    us by the due date you must contact us if you still wish to be
    considered for this program and have your loan modified.

    Please note that your total payment, including an estimated escrow
    portion of $419.83, will be $2,878.20 and is effective on 01/01/19.
    Additionally, your escrow payment amount will adjust if your taxes,
    insurance premiums and/or assessment amounts change.  If this occurs,
    the amount of your monthly payment that RLMS must place in escrow will
    also adjust as permitted by law. This means that your monthly payment
    may change.




EQUAL HOUSING
LENDER



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2242 fax
www.rushmorelm.com

Due to the timing of your tax and insurance payments, we have
determined that there is a shortage of funds in your escrow account
in the amount of $0.00.  You may pay this amount over a 0 year
(0 months) period.  This monthly payment has already been included
in the monthly escrow payment stated above.  If you wish to pay the total
shortage now a lump sum, please contact us. Paying this amount now in a
lump sum will reduce your new monthly mortgage payment.

**STEP 2   CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Be certain to make any remaining trial period payment on or before the
dates they are due. If the trial period payments are made after their
due dates or in amounts different from the amount required, your loan
may not be modified. All other conditions of the trial period plan must
also be completed as required.

If your loan is in default and actions have been undertaken pursuant to
that default, there may be fees related to those actions which have yet
to be incurred, but necessarily will be performed as part of the
resolution of the proceedings related to the default (the "Default-
related Actions"). Such Default-related Actions may include, but are
not limited to, actions such as the dismissal of an ongoing foreclosure
action, a meeting of creditors, or other court-mandated procedures. The
cost of any such action has not been included in the modification, as
that cost has not yet been incurred. You do not have to pay for any
fees or costs for Default-related Actions unless and until they are
incurred, and you are responsible only for the actual costs of those
Default-related Actions. If you accept this modification, you will be
responsible for any outstanding fees related to the Default-related
Actions and they will appear on your periodic billing statement after
the modification has been completed.

NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO BE A WAIVER OF THE
BORROWERS DISCHARGE, AN ATTEMPT TO COLLECT AGAINST THE BORROWER
PERSONALLY, OR AN ATTEMPT TO REVIVE PERSONAL LIABILITY.

Advice to Consult with Counsel:
YOU ARE STRONGLY ENCOURAGED TO CONSULT WITH YOUR OWN LEGAL COUNSEL TO
DETERMINE THE LEGAL EFFECT OF THE ENCLOSED AGREEMENT.

If you wish to reinstate or pay-off your loan, or have any questions
regarding the Loan Modification Agreement please contact Rushmore Loan
Management Services LLC directly at 1-888-504-6700.

Sincerely,

Rushmore Loan Management Services LLC

LM086 014 CQH



EQUAL HOUSING
LENDER

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

If you have any other mortgage loans secured by the same property not serviced by Rushmore, please contact your other servicer directly to discuss any possible loss mitigation options that may be available to you.

If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.

**LEGAL NOTIFICATION:** Rushmore Loan Management Services LLC may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

### Notice of Error Resolution & Information Request Procedures
The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC (RLMS). Please keep this document for your records.

***If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:***

**Rushmore Loan Management Services LLC**
P.O. Box 52262
Irvine, California 92619-2262

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error or a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

### HUD STATEMENT
Pursuant to section 169 of the Housing and Community Development Act of 1987, you may have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may obtain a list of the HUD approved housing counseling agencies by calling the HUD nationwide toll free telephone at 1-800-569-4287.

### Equal Credit Opportunity Act Disclosure
NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552.

## STATE SPECIFIC NOTICES

**The following notice applies to Arkansas residents only:**

Please note that Rushmore Loan Management Services LLC is licensed in Arkansas and that complaints about Rushmore Loan Management Services LLC may be submitted to the Arkansas Securities Department via the Department's website (http://www.securities.arkansas.gov/) or toll-free 1-800-981-4429.

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car.
Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:
Irvin Borenstein
7200 S. Alton Way, #B180
Centennial, CO 80112
303-309-3839

**The following notice applies to Hawaii residents only:**

Rushmore is licensed by the Division of Financial Institutions for the State of Hawaii. A borrower may file a complaint about Rushmore Loan Management Services with the Commissioner:

**Division of Financial Institutions**
Department of Commerce and Consumer Affairs
King Kalakaua Building
335 Merchant Street, Rm. 221
Honolulu, HI 96813

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to North Carolina residents only:**

**If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the North Carolina Office of the Commissioner of Banks website, www.nccob.gov .**

**RUSHMORE LOAN MANAGEMENT SERVICES LLC Branch Addresses:**
California Branch: 15480 Laguna Canyon Road, Suite 100, Irvine CA 92618
Texas Branch: 1755 Wittington Place, Suite 400, Dallas TX 75234
Oklahoma Branch: 2000 North Classen Blvd, Suite N3400, Oklahoma City, OK 73106

of **6.750%** will remain in effect until principal and interest are paid in full.  If on **December 1, 2058** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or

release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6.   Notwithstanding anything to the contrary contained in this Agreement, if a discharge has been granted, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability.  However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances.  The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder.  Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

7.   Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due. This Mortgage is given in connection with the refinancing of an obligation secured by an existing mortgage, recorded in Official Records Book 26005, Page 0911, Instrument No: 2007R1027451, Public Records of MIAMI-DADE COUNTY, Florida from the Mortgagor hereunder to the Mortgagee hereunder, or to the assignor of the Mortgagee hereunder.  As of the date of refinancing, the unpaid principal balance of the original obligation, plus accrued but unpaid interest, secured by the existing mortgage is equal to $355,947.19.   The principal balance of the new obligation

secured by this Mortgage is $407,449.14, which amount represents, as of the refinancing, the unpaid principal balance of the original obligation, plus accrued but unpaid interest. Notwithstanding anything to the contrary contained in the foregoing, if the obligor under the new obligation is not liable to the obligee under the obligation secured by this Mortgage, then the additional nonrecurring intangible tax shall be computed on the entire principal balance of the new obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**FRANCISCO ROCHE**  -Borrower

_____ (Seal)
**SONNY C ROCHE**  -Borrower

_____-Witness    _____-Witness

_____ [Space Below This Line For Acknowledgments] _____
State of Florida

County of _____

The foregoing instrument was acknowledged before me this _____ day of _____, 20_____,
by _____
_____,

who is personally known to me or who has produced _____ as Identification.

_____
(Signature of person taking acknowledgment)

_____
(Name typed printed or stamped)

_____
(Title or Rank)

_____
(Serial Number if any)
My Commission expires : _____

Origination Company: **Rushmore Loan Management Services LLC**
NMLSR ID: **LO9784**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
* 6 6 8 0 *
LOAN MODIFICATION AGREEMENT—Single Family Fannie Mae Uniform Instrument -
Florida
Mortgage Cadence Document Center   © 8833 08/14

Form 3179 1/01 (rev. 4/14)

*(page 4 of 5)*

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
* 6 6 8 0 *
LOAN MODIFICATION AGREEMENT—Single Family Fannie Mae Uniform Instrument -
Florida
Mortgage Cadence Document Center   © 8833 08/14

Form 3179 1/01 (rev. 4/14)

*(page 5 of 5)*

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number: ███6680

FHA/VA Case Number:

Borrower(s):     **FRANCISCO ROCHE and SONNY C ROCHE**

Property Address:     **7200 SW 100TH AVE, MIAMI, FL 33173**

Servicer:     **Rushmore Loan Management Services LLC**

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this  **5th** day of **December, 2018.**

_____ (Seal)
**FRANCISCO ROCHE**  -Borrower

_____ (Seal)
**SONNY C ROCHE**  -Borrower



Mortgage Cadence Document Center  © 9572 08/13



Errors and Omissions/Compliance Agreement



ORIGIN ID:SIGA  (949) 341-5750
MANUEL LOPEZ
RUSHMORE LOAN MGT SERVICES
221 AVE PONCE DE LEON STE 1800

HATO REY, PR 00917
UNITED STATES US

SHIP DATE: 06DEC18
ACTWGT: 1.00 LB MAN
CAD: 031421B/CAFE3012

BILL THIRD PARTY

TO FRANCISCO AND SONNY ROCHE

7200SW 100TH AVE

MIAMI FL 33173                                    (US)
(305) 412-0023          REF: 2333
PO: DCRMAIL @RUSHMORELM.COM

FedEx
Express

E

TRK#  4661 8429 7580            MON – 10 DEC 4:30P
0430                            INTL ** 2DAY **

SH ATUA                               33173
                               FL-US  MIA



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2242 fax
www.rushmorelm.com

 6680*CS100 N1¦1

January 14, 2019

Francisco Roche
Sonny C Roche
7200 SW 100th Ave
Miami FL 33173 0000
*

                    Loan No.:    ▮6680
        Property Address:   7200 SW 100th Ave
                            Miami FL 33173

This response is in reference to your written inquiry received on
January 11, 2019 .

Per your request, please find enclosed the copy of the Payment History
for your review.

Should you have any questions, please feel free to contact our
office at Toll Free 1-888-504-6700, Monday through Thursday 6:00 a.m.
to 7:00 p.m., Friday 6:00 a.m. to 6:00 p.m. Pacific Standard Time.

Sincerely,


Loan Servicing
Rushmore Loan Management Services

CS100 006 65T



EXHIBIT
"J"



EQUAL HOUSING
LENDER

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

If you have any other mortgage loans secured by the same property not serviced by Rushmore, please contact your other servicer directly to discuss any possible loss mitigation options that may be available to you.

If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.

**LEGAL NOTIFICATION:** Rushmore Loan Management Services LLC may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

### Notice of Error Resolution & Information Request Procedures

The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC (RLMS). Please keep this document for your records.

*If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:*

**Rushmore Loan Management Services LLC**
P.O. Box 52262
Irvine, California 92619-2262

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error or a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

### HUD STATEMENT

Pursuant to section 169 of the Housing and Community Development Act of 1987, you may have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may obtain a list of the HUD approved housing counseling agencies by calling the HUD nationwide toll free telephone at 1-800-569-4287.

### Equal Credit Opportunity Act Disclosure

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552.

## STATE SPECIFIC NOTICES

**The following notice applies to Arkansas residents only:**

Please note that Rushmore Loan Management Services LLC is licensed in Arkansas and that complaints about Rushmore Loan Management Services LLC may be submitted to the Arkansas Securities Department via the Department's website (http://www.securities.arkansas.gov/) or toll-free 1-800-981-4429.

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car.
Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:
Irvin Borenstein
7200 S. Alton Way, #B180
Centennial, CO 80112
303-309-3839

**The following notice applies to Hawaii residents only:**

Rushmore is licensed by the Division of Financial Institutions for the State of Hawaii. A borrower may file a complaint about Rushmore Loan Management Services with the Commissioner:

**Division of Financial Institutions**
Department of Commerce and Consumer Affairs
King Kalakaua Building
335 Merchant Street, Rm. 221
Honolulu, HI 96813

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to North Carolina residents only:**

**If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the North Carolina Office of the Commissioner of Banks website, www.nccob.gov.**

**RUSHMORE LOAN MANAGEMENT SERVICES LLC Branch Addresses:**
California Branch: 15480 Laguna Canyon Road, Suite 100, Irvine CA 92618
Texas Branch: 1755 Wittington Place, Suite 400, Dallas TX 75234
Oklahoma Branch: 2000 North Classen Blvd, Suite N3400, Oklahoma City, OK 73106

**Collection Agency**
CA Office License Number: 103651
TX Office License Number: 112248
OK Office License Number: 113559

**The following notice applies to New York residents only:**

NOTICE PURSUANT TO NEW YORK STATE BANKING REGULATION 419
Rushmore is registered with the Superintendent of Banks for the State of New York. A borrower may file a complaint about Rushmore Loan Management Services with the New York State Department of Financial Services. A borrower may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS Unique ID Number 185729

**The following notice applies to Texas residents only:**

Statement: Pursuant to Texas Finance Code Chapter 158.101, a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan. COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 North Lamar, Suite 201, Austin, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550

**The following notice applies to Oregon residents only:**

Pursuant to Oregon Revised Statutes 86A.324(l)(i), the Director of the Department of Consumer and Business Services prescribes by rule. Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. If you have a question or complaint against a company or individual in the financial services industry, you may file a complaint by calling the Department at 1-866-814-9710 or by visiting http://dfr.oregon.gov. You may also send your complaints by fax to 503-947-7862, or by mail to: PO Box 14480, Salem, OR 97309-0405.

**The following notice applies to Pennsylvania residents only:**

The lender shall retain a security interest in the residential real estate unless and until the debt is fully satisfied and the security interest is released.

**The following notice applies to Wisconsin residents only:**

This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

Rev 11152018



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 01/14/19
REQ BY OUM                                                         PAGE    1


FRANCISCO ROCHE              THANK YOU FOR CONTACTING RUSHMORE LOAN
SONNY C ROCHE               MANAGEMENT SERVICES
7200 SW 100TH AVE
MIAMI              FL 33173


LOAN NUMBER:    ████6680
********************************************************************************
----------------------- CURRENT ACCOUNT INFORMATION -----------------------
  DATE        TOTAL       PRINCIPAL        LOAN        CURRENT
 PAYMENT     PAYMENT      & INTEREST      INTEREST     PRINCIPAL         ESCROW
  DUE        AMOUNT       PAYMENT          RATE        BALANCE          BALANCE
01-01-11    1,621.50     1,621.50       6.75000      236,916.79      23,848.59-
  2ND MORTGAGE:                          0.00   0.00000          0.00
********************************************************************************
              ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS     DUE      TRANSACTION        TRANSACTION
 DATE       DATE     CODE               DESCRIPTION            EFFECTIVE DATE
                                                              OF TRANSACTION
-------------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/        ESCROW PAID/ ------------OTHER-------------
   AMOUNT      BALANCE    INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
-------------------------------------------------------------------------------
01-10-19  00-00  631  PROPERTY PRESERVATION
     1.50      0.00        0.00      0.00
01-10-19  00-00  631  PROPERTY PRESERVATION
    15.00      0.00        0.00      0.00
12-31-18  01-11  173  PAYMENT
 2,875.00      0.00        0.00      0.00    2,875.00     SUSPENSE
12-20-18  00-00  601  MISC. CORPORATE DISBURSEMENT
     1.75      0.00        0.00      0.00
12-18-18  00-00  601  MISC. CORPORATE DISBURSEMENT
     0.29      0.00        0.00      0.00
11-30-18  12-10  173  PAYMENT
     0.00    287.23    1,334.27      0.00
           236,916.79                        NEW PRINCIPAL/ESCROW BALANCES
11-30-18  11-10  173  PAYMENT
 2,875.00    285.62    1,335.88      0.00      368.00-    SUSPENSE
           237,204.02                        NEW PRINCIPAL/ESCROW BALANCES
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/19
REQ BY OUM                                                       PAGE    2


FRANCISCO ROCHE
LOAN NUMBER:       ████6680
             ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE     TRANSACTION          TRANSACTION                EFFECTIVE DATE
DATE       DATE    CODE                 DESCRIPTION                OF TRANSACTION
------------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/        ESCROW PAID/ ------------OTHER-------------
   AMOUNT        BALANCE   INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
------------------------------------------------------------------------------
11-19-18  00-00  601  MISC. CORPORATE DISBURSEMENT
     1.75        0.00      0.00      0.00
11-15-18  11-10  161  ESCROW ADVANCE
  2,574.67       0.00      0.00    2574.67
11-15-18  11-18  312  COUNTY TAX
  2,574.67-      0.00      0.00    2574.67-
                                  23848.59-  NEW PRINCIPAL/ESCROW BALANCES
11-08-18  00-00  601  MISC. CORPORATE DISBURSEMENT
     0.24        0.00      0.00      0.00
11-05-18  00-00  601  MISC. CORPORATE DISBURSEMENT
     0.23        0.00      0.00      0.00
10-31-18  10-10  173  PAYMENT                                        10-30-18
  2,875.00     284.02  1,337.48      0.00  1,253.50   SUSPENSE
             237,489.64                    NEW PRINCIPAL/ESCROW BALANCES
10-31-18  00-00  601  MISC. CORPORATE DISBURSEMENT
     1.75        0.00      0.00      0.00
10-29-18  00-00  713  MISC. EXPENSE REPAYMENT
    70.00        0.00      0.00      0.00
10-29-18  00-00  713  MISC. EXPENSE REPAYMENT
    70.00        0.00      0.00      0.00
10-08-18  00-00  601  MISC. CORPORATE DISBURSEMENT
     1.75        0.00      0.00      0.00
10-05-18  00-00  630  ATTORNEY ADVANCES
   250.00        0.00      0.00      0.00
09-28-18  09-10  173  PAYMENT
     0.00      282.43  1,339.07      0.00
             237,773.66                    NEW PRINCIPAL/ESCROW BALANCES
```

NMLS ID: 185729

EQUAL HOUSING LENDER



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 01/14/19
REQ BY OUM                                                              PAGE   3


FRANCISCO ROCHE
LOAN NUMBER: ████████6680


                  ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS     DUE       TRANSACTION            TRANSACTION              EFFECTIVE DATE
DATE        DATE      CODE                   DESCRIPTION              OF TRANSACTION
---------------------------------------------------------------------------------
   TRANSACTION    PRIN. PAID/         ESCROW PAID/ -----------OTHER-------------
   AMOUNT          BALANCE    INTEREST    BALANCE    AMOUNT   CODE/DESCRIPTION
---------------------------------------------------------------------------------
09-28-18  08-10  173  PAYMENT
   2,875.00       280.85   1,340.65      0.00     368.00-  SUSPENSE
               238,056.09                          NEW PRINCIPAL/ESCROW BALANCES
09-14-18  00-00  601  MISC. CORPORATE DISBURSEMENT
       1.75         0.00       0.00      0.00
08-31-18  07-10  173  PAYMENT                                          08-28-18
       0.00       279.28   1,342.22      0.00   1,621.50-  SUSPENSE
               238,336.94                          NEW PRINCIPAL/ESCROW BALANCES
08-30-18  07-10  173  PAYMENT
       0.00         0.00       0.00      0.00
08-30-18  06-10  173  PAYMENT                                          08-28-18
   2,875.00       277.72   1,343.78      0.00   1,253.50   SUSPENSE
               238,616.22                          NEW PRINCIPAL/ESCROW BALANCES
08-29-18  00-00  601  MISC. CORPORATE DISBURSEMENT
       0.33         0.00       0.00      0.00
08-24-18  00-00  601  MISC. CORPORATE DISBURSEMENT
       0.29         0.00       0.00      0.00
07-30-18  05-10  173  PAYMENT                                          07-27-18
       0.00       276.17   1,345.33      0.00
               238,893.94                          NEW PRINCIPAL/ESCROW BALANCES
07-30-18  04-10  173  PAYMENT                                          07-27-18
   2,875.00       274.62   1,346.88      0.00     368.00-  SUSPENSE
               239,170.11                          NEW PRINCIPAL/ESCROW BALANCES
07-30-18  00-00  601  MISC. CORPORATE DISBURSEMENT
       1.75         0.00       0.00      0.00
07-25-18  00-00  601  MISC. CORPORATE DISBURSEMENT
     490.00         0.00       0.00      0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/19
REQ BY OUM                                                       PAGE    4


FRANCISCO ROCHE
LOAN NUMBER:  ████████6680

                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS   DUE     TRANSACTION          TRANSACTION                EFFECTIVE DATE
DATE      DATE    CODE                 DESCRIPTION                OF TRANSACTION
--------------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/          ESCROW PAID/ ------------OTHER-------------
    AMOUNT        BALANCE    INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
--------------------------------------------------------------------------------
07-23-18  00-00   631  PROPERTY PRESERVATION
       85.00        0.00       0.00       0.00
07-23-18  00-00   631  PROPERTY PRESERVATION
      125.00        0.00       0.00       0.00
07-11-18  00-00   601  MISC. CORPORATE DISBURSEMENT
    3,027.50        0.00       0.00       0.00
06-28-18  00-00   601  MISC. CORPORATE DISBURSEMENT
        0.31        0.00       0.00       0.00
06-22-18  03-10   173  PAYMENT                                          06-21-18
    2,875.00      273.09   1,348.41       0.00   1,253.50    SUSPENSE
                239,444.73                        NEW PRINCIPAL/ESCROW BALANCES
06-12-18  00-00   631  PROPERTY PRESERVATION
        1.50        0.00       0.00       0.00
06-12-18  00-00   631  PROPERTY PRESERVATION
       15.00        0.00       0.00       0.00
06-12-18  00-00   631  PROPERTY PRESERVATION
       15.00        0.00       0.00       0.00
06-11-18  00-00   633  MISC. F/C AND B/R EXPENSES
       70.00        0.00       0.00       0.00
06-11-18  00-00   633  MISC. F/C AND B/R EXPENSES
       70.00        0.00       0.00       0.00
06-11-18  00-00   630  ATTORNEY ADVANCES
      250.00        0.00       0.00       0.00
06-07-18  00-00   631  PROPERTY PRESERVATION
      120.00        0.00       0.00       0.00
06-04-18  00-00   601  MISC. CORPORATE DISBURSEMENT
      245.00        0.00       0.00       0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT              DATE 01/14/19
REQ BY OUM                                                          PAGE   5


FRANCISCO ROCHE
LOAN NUMBER:     ████████6680


                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS     DUE     TRANSACTION              TRANSACTION               EFFECTIVE DATE
DATE        DATE    CODE                     DESCRIPTION               OF TRANSACTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   TRANSACTION   PRIN. PAID/          ESCROW PAID/ - - - - - - - - - - OTHER - - - - - - - - - - - -
     AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
05-30-18  00-00  601  MISC. CORPORATE DISBURSEMENT
          0.26         0.00        0.00        0.00
05-25-18  00-00  601  MISC. CORPORATE DISBURSEMENT
          1.75         0.00        0.00        0.00
05-16-18  03-10  152  LATE CHARGE ASSESSMENT
          0.00         0.00        0.00        0.00       81.08-1 LATE CHARGES
05-15-18  00-00  601  MISC. CORPORATE DISBURSEMENT
          1.75         0.00        0.00        0.00
05-15-18  00-00  601  MISC. CORPORATE DISBURSEMENT
          0.34         0.00        0.00        0.00
05-14-18  00-00  630  ATTORNEY ADVANCES
        175.00         0.00        0.00        0.00
05-14-18  00-00  630  ATTORNEY ADVANCES
        175.00         0.00        0.00        0.00
05-14-18  00-00  630  ATTORNEY ADVANCES
        262.50         0.00        0.00        0.00
05-10-18  00-00  601  MISC. CORPORATE DISBURSEMENT
          1.75         0.00        0.00        0.00
05-08-18  00-00  601  MISC. CORPORATE DISBURSEMENT
          0.38         0.00        0.00        0.00
05-02-18  00-00  601  MISC. CORPORATE DISBURSEMENT
          0.41         0.00        0.00        0.00
05-02-18  00-00  601  MISC. CORPORATE DISBURSEMENT
          1.75         0.00        0.00        0.00
04-30-18  00-00  631  PROPERTY PRESERVATION
         15.00         0.00        0.00        0.00
04-25-18  03-10  161  ESCROW ADVANCE
        113.00         0.00        0.00      113.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT         DATE 01/14/19
REQ BY OUM                                                      PAGE    6


FRANCISCO ROCHE
LOAN NUMBER:      ████6680

                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE     TRANSACTION                                  EFFECTIVE DATE
DATE       DATE    CODE             DESCRIPTION                 OF TRANSACTION
---------------------------------------------------------------------------------
   TRANSACTION   PRIN. PAID/         ESCROW PAID/ ------------OTHER-------------
     AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
---------------------------------------------------------------------------------
04-25-18  03-19  351  HAZARD INSURANCE
       113.00-         0.00       0.00     113.00-
                                        21273.92-   NEW PRINCIPAL/ESCROW BALANCES
04-16-18  03-10  152  LATE CHARGE ASSESSMENT
         0.00          0.00       0.00       0.00     81.08-1 LATE CHARGES
04-10-18  00-00  601  MISC. CORPORATE DISBURSEMENT
         0.43          0.00       0.00       0.00
04-09-18  00-00  601  MISC. CORPORATE DISBURSEMENT
         0.37          0.00       0.00       0.00
03-29-18  00-00  631  PROPERTY PRESERVATION
        15.00          0.00       0.00       0.00
03-29-18  00-00  601  MISC. CORPORATE DISBURSEMENT
         1.75          0.00       0.00       0.00
03-26-18  03-10  161  ESCROW ADVANCE
     2,364.00          0.00       0.00    2364.00
03-26-18  03-18  351  HAZARD INSURANCE
     2,364.00-         0.00       0.00    2364.00-
                                        21160.92-   NEW PRINCIPAL/ESCROW BALANCES
03-22-18  00-00  601  MISC. CORPORATE DISBURSEMENT
         1.18          0.00       0.00       0.00
03-16-18  03-10  152  LATE CHARGE ASSESSMENT
         0.00          0.00       0.00       0.00     81.08-1 LATE CHARGES
03-07-18  00-00  630  ATTORNEY ADVANCES
        87.50          0.00       0.00       0.00
03-07-18  00-00  630  ATTORNEY ADVANCES
        35.00          0.00       0.00       0.00
03-07-18  00-00  630  ATTORNEY ADVANCES
       175.00          0.00       0.00       0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/19
REQ BY OUM                                                       PAGE    7


FRANCISCO ROCHE
LOAN NUMBER:    ████6680

                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE    TRANSACTION         TRANSACTION                EFFECTIVE DATE
DATE       DATE   CODE                DESCRIPTION                OF TRANSACTION
--------------------------------------------------------------------------------
   TRANSACTION   PRIN. PAID/          ESCROW PAID/ ------------OTHER------------
   AMOUNT        BALANCE    INTEREST  BALANCE     AMOUNT  CODE/DESCRIPTION
--------------------------------------------------------------------------------
03-07-18   00-00  630  ATTORNEY ADVANCES
      87.50       0.00       0.00     0.00
03-07-18   00-00  630  ATTORNEY ADVANCES
      35.00       0.00       0.00     0.00
03-07-18   00-00  630  ATTORNEY ADVANCES
      87.50       0.00       0.00     0.00
03-07-18   00-00  630  ATTORNEY ADVANCES
      87.50       0.00       0.00     0.00
03-07-18   00-00  630  ATTORNEY ADVANCES
     175.00       0.00       0.00     0.00
03-01-18   00-00  631  PROPERTY PRESERVATION
      15.00       0.00       0.00     0.00
02-16-18   03-10  152  LATE CHARGE ASSESSMENT
       0.00       0.00       0.00     0.00        81.08-1 LATE CHARGES
01-31-18   00-00  631  PROPERTY PRESERVATION
       1.50       0.00       0.00     0.00
01-31-18   00-00  631  PROPERTY PRESERVATION
      15.00       0.00       0.00     0.00
01-16-18   03-10  152  LATE CHARGE ASSESSMENT
       0.00       0.00       0.00     0.00        81.08-1 LATE CHARGES
01-09-18   00-00  601  MISC. CORPORATE DISBURSEMENT
       0.01       0.00       0.00     0.00
12-29-17   00-00  601  MISC. CORPORATE DISBURSEMENT
       1.18       0.00       0.00     0.00
12-29-17   00-00  601  MISC. CORPORATE DISBURSEMENT
       0.36       0.00       0.00     0.00
12-18-17   03-10  152  LATE CHARGE ASSESSMENT
       0.00       0.00       0.00     0.00        81.08-1 LATE CHARGES
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/19
REQ BY OUM                                                       PAGE    8


FRANCISCO ROCHE
LOAN NUMBER:       6680
                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS     DUE     TRANSACTION         TRANSACTION               EFFECTIVE DATE
DATE        DATE    CODE                DESCRIPTION                OF TRANSACTION
--------------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/          ESCROW PAID/ ------------OTHER------------
  AMOUNT        BALANCE    INTEREST  BALANCE      AMOUNT  CODE/DESCRIPTION
--------------------------------------------------------------------------------
12-15-17  00-00  633  MISC. F/C AND B/R EXPENSES
    115.00         0.00        0.00      0.00
12-15-17  00-00  631  PROPERTY PRESERVATION
     15.00         0.00        0.00      0.00
12-15-17  00-00  631  PROPERTY PRESERVATION
      1.50         0.00        0.00      0.00
12-04-17  00-00  631  PROPERTY PRESERVATION
     15.00         0.00        0.00      0.00
12-04-17  00-00  631  PROPERTY PRESERVATION
      1.50         0.00        0.00      0.00
11-28-17  03-10  161  ESCROW ADVANCE
  2,560.92         0.00        0.00   2560.92
11-28-17  11-17  312  COUNTY TAX
  2,560.92-        0.00        0.00   2560.92-
                                     18796.92-   NEW PRINCIPAL/ESCROW BALANCES
11-16-17  03-10  152  LATE CHARGE ASSESSMENT
      0.00         0.00        0.00      0.00     81.08-1 LATE CHARGES
11-06-17  00-00  630  ATTORNEY ADVANCES
     25.00         0.00        0.00      0.00
11-03-17  00-00  630  ATTORNEY ADVANCES
    850.00         0.00        0.00      0.00
10-31-17  00-00  601  MISC. CORPORATE DISBURSEMENT
      1.18         0.00        0.00      0.00
10-20-17  00-00  633  MISC. F/C AND B/R EXPENSES
    181.00         0.00        0.00      0.00
10-16-17  03-10  152  LATE CHARGE ASSESSMENT
      0.00         0.00        0.00      0.00     81.08-1 LATE CHARGES
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER  ACCOUNT  ACTIVITY  STATEMENT              DATE 01/14/19
REQ BY OUM                                                             PAGE    9


FRANCISCO ROCHE
LOAN NUMBER: ████████6680

                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS     DUE      TRANSACTION              TRANSACTION                 EFFECTIVE DATE
DATE        DATE     CODE                     DESCRIPTION                 OF TRANSACTION
-------------------------------------------------------------------------------------
   TRANSACTION    PRIN. PAID/          ESCROW PAID/ ------------OTHER-------------
    AMOUNT        BALANCE      INTEREST    BALANCE    AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------------
10-11-17  00-00  601  MISC. CORPORATE DISBURSEMENT
    0.33          0.00        0.00        0.00
10-09-17  00-00  601  MISC. CORPORATE DISBURSEMENT
    1.18          0.00        0.00        0.00
09-19-17  00-00  601  MISC. CORPORATE DISBURSEMENT
    0.33          0.00        0.00        0.00
08-29-17  00-00  631  PROPERTY PRESERVATION
   15.00          0.00        0.00        0.00
08-29-17  00-00  631  PROPERTY PRESERVATION
    1.50          0.00        0.00        0.00
08-17-17  00-00  601  MISC. CORPORATE DISBURSEMENT
    1.18          0.00        0.00        0.00
08-16-17  00-00  601  MISC. CORPORATE DISBURSEMENT
    0.30          0.00        0.00        0.00
08-04-17  00-00  601  MISC. CORPORATE DISBURSEMENT
    1.18          0.00        0.00        0.00
07-26-17  00-00  631  PROPERTY PRESERVATION
   15.00          0.00        0.00        0.00
07-26-17  00-00  631  PROPERTY PRESERVATION
    1.50          0.00        0.00        0.00
07-21-17  00-00  630  ATTORNEY ADVANCES
  500.00          0.00        0.00        0.00
07-19-17  00-00  601  MISC. CORPORATE DISBURSEMENT
    0.28          0.00        0.00        0.00
07-17-17  00-00  630  ATTORNEY ADVANCES
  425.00          0.00        0.00        0.00
07-12-17  00-00  601  MISC. CORPORATE DISBURSEMENT
    0.49          0.00        0.00        0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 01/14/19
REQ BY OUM                                                        PAGE  10


FRANCISCO ROCHE
LOAN NUMBER:     ████6680

                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS     DUE      TRANSACTION          TRANSACTION                EFFECTIVE DATE
DATE        DATE     CODE                 DESCRIPTION                OF TRANSACTION
------------------------------------------------------------------------------------
   TRANSACTION    PRIN. PAID/           ESCROW PAID/ ------------OTHER-------------
     AMOUNT        BALANCE     INTEREST   BALANCE     AMOUNT    CODE/DESCRIPTION
------------------------------------------------------------------------------------
07-07-17  00-00  601  MISC. CORPORATE DISBURSEMENT
          1.18          0.00        0.00        0.00
07-05-17  00-00  631  PROPERTY PRESERVATION
        125.00          0.00        0.00        0.00
07-05-17  00-00  631  PROPERTY PRESERVATION
         85.00          0.00        0.00        0.00
06-27-17  00-00  631  PROPERTY PRESERVATION
          1.50          0.00        0.00        0.00
06-27-17  00-00  631  PROPERTY PRESERVATION
         15.00          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
         87.50          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
         87.50          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
        350.00          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
        175.00          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
        175.00          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
        350.00          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
        175.00          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
        175.00          0.00        0.00        0.00
06-19-17  00-00  630  ATTORNEY ADVANCES
        700.00          0.00        0.00        0.00
```



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/19
REQ BY OUM                                                       PAGE  11


FRANCISCO ROCHE
LOAN NUMBER:       6680

                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE     TRANSACTION         TRANSACTION           EFFECTIVE DATE
DATE       DATE    CODE                DESCRIPTION           OF TRANSACTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
  TRANSACTION  PRIN. PAID/          ESCROW PAID/ - - - - - - - - OTHER - - - - - - - - - - - -
  AMOUNT       BALANCE    INTEREST    BALANCE    AMOUNT   CODE/DESCRIPTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
06-19-17  00-00  630  ATTORNEY ADVANCES
    175.00         0.00        0.00        0.00
06-13-17  00-00  630  ATTORNEY ADVANCES
    225.00         0.00        0.00        0.00
06-02-17  00-00  601  MISC. CORPORATE DISBURSEMENT
      0.31         0.00        0.00        0.00
05-30-17  00-00  601  MISC. CORPORATE DISBURSEMENT
      1.18         0.00        0.00        0.00
05-08-17  00-00  633  MISC. F/C AND B/R EXPENSES
      1.89         0.00        0.00        0.00
05-08-17  00-00  633  MISC. F/C AND B/R EXPENSES
    650.80         0.00        0.00        0.00
05-08-17  00-00  633  MISC. F/C AND B/R EXPENSES
     23.00         0.00        0.00        0.00
05-03-17  00-00  601  MISC. CORPORATE DISBURSEMENT
      0.27         0.00        0.00        0.00
04-26-17  00-00  631  PROPERTY PRESERVATION
     15.00         0.00        0.00        0.00
04-21-17  00-00  601  MISC. CORPORATE DISBURSEMENT
      1.18         0.00        0.00        0.00
04-17-17  03-10  152  LATE CHARGE ASSESSMENT
      0.00         0.00        0.00        0.00     81.08-1 LATE CHARGES
04-17-17  00-00  630  ATTORNEY ADVANCES
     78.75         0.00        0.00        0.00
04-17-17  00-00  630  ATTORNEY ADVANCES
    175.00         0.00        0.00        0.00
04-17-17  00-00  630  ATTORNEY ADVANCES
     87.50         0.00        0.00        0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/19
REQ BY OUM                                                       PAGE  12


FRANCISCO ROCHE
LOAN NUMBER:        6680

                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS     DUE      TRANSACTION            TRANSACTION              EFFECTIVE DATE
DATE        DATE     CODE                   DESCRIPTION              OF TRANSACTION
------------------------------------------------------------------------------------
   TRANSACTION   PRIN. PAID/         ESCROW PAID/ -----------OTHER-------------
     AMOUNT        BALANCE     INTEREST    BALANCE    AMOUNT   CODE/DESCRIPTION
------------------------------------------------------------------------------------
04-17-17  00-00  630  ATTORNEY ADVANCES
     175.00        0.00        0.00        0.00
04-13-17  00-00  601  MISC. CORPORATE DISBURSEMENT
       1.18        0.00        0.00        0.00
04-12-17  00-00  601  MISC. CORPORATE DISBURSEMENT
       0.37        0.00        0.00        0.00
04-12-17  00-00  601  MISC. CORPORATE DISBURSEMENT
       0.31        0.00        0.00        0.00
04-12-17  00-00  601  MISC. CORPORATE DISBURSEMENT
       0.32        0.00        0.00        0.00
04-12-17  00-00  601  MISC. CORPORATE DISBURSEMENT
       0.35        0.00        0.00        0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
     175.00        0.00        0.00        0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
     262.50        0.00        0.00        0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
      87.50        0.00        0.00        0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
      87.50        0.00        0.00        0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
     350.00        0.00        0.00        0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
     105.00        0.00        0.00        0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
      35.00        0.00        0.00        0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
     350.00        0.00        0.00        0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT              DATE 01/14/19
REQ BY OUM                                                          PAGE  13


FRANCISCO ROCHE
LOAN NUMBER: ██████6680


                  ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE      TRANSACTION         TRANSACTION              EFFECTIVE DATE
DATE       DATE     CODE                DESCRIPTION              OF TRANSACTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
  TRANSACTION    PRIN. PAID/         ESCROW PAID/ - - - - - - - - - -OTHER- - - - - - - - - -
  AMOUNT         BALANCE    INTEREST    BALANCE    AMOUNT  CODE/DESCRIPTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
04-11-17  00-00  630  ATTORNEY ADVANCES
    175.00         0.00       0.00       0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
    175.00         0.00       0.00       0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
    175.00         0.00       0.00       0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
    175.00         0.00       0.00       0.00
04-11-17  00-00  630  ATTORNEY ADVANCES
    350.00         0.00       0.00       0.00
03-31-17  00-00  630  ATTORNEY ADVANCES
     17.50         0.00       0.00       0.00
03-23-17  00-00  631  PROPERTY PRESERVATION
     15.00         0.00       0.00       0.00
03-16-17  03-10  152  LATE CHARGE ASSESSMENT
      0.00         0.00       0.00       0.00        81.08-1 LATE CHARGES
03-13-17  00-00  601  MISC. CORPORATE DISBURSEMENT
      1.18         0.00       0.00       0.00
02-21-17  00-00  631  PROPERTY PRESERVATION
     15.00         0.00       0.00       0.00
02-16-17  03-10  152  LATE CHARGE ASSESSMENT
      0.00         0.00       0.00       0.00        81.08-1 LATE CHARGES
02-10-17  03-10  161  ESCROW ADVANCE
  2,305.00         0.00       0.00    2305.00
02-10-17  03-17  351  HAZARD INSURANCE
  2,305.00-        0.00       0.00    2305.00-
                                     16236.00-   NEW PRINCIPAL/ESCROW BALANCES
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                      CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/19
REQ BY OUM                                                         PAGE  14


FRANCISCO ROCHE
LOAN NUMBER:        6680

                      ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE     TRANSACTION            TRANSACTION                EFFECTIVE DATE
DATE       DATE    CODE                   DESCRIPTION                OF TRANSACTION
-------------------------------------------------------------------------------
  TRANSACTION    PRIN. PAID/            ESCROW PAID/ ------------OTHER------------
    AMOUNT        BALANCE      INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------
02-08-17  00-00  601  MISC. CORPORATE DISBURSEMENT
     1.18          0.00        0.00       0.00
02-06-17  00-00  630  ATTORNEY ADVANCES
    35.00          0.00        0.00       0.00
02-06-17  00-00  630  ATTORNEY ADVANCES
   262.50          0.00        0.00       0.00
01-26-17  00-00  631  PROPERTY PRESERVATION
    15.00          0.00        0.00       0.00
01-17-17  03-10  152  LATE CHARGE ASSESSMENT
     0.00          0.00        0.00       0.00        81.08-1 LATE CHARGES
01-12-17  00-00  601  MISC. CORPORATE DISBURSEMENT
     1.18          0.00        0.00       0.00
12-30-16  00-00  631  PROPERTY PRESERVATION
    15.00          0.00        0.00       0.00
12-16-16  03-10  152  LATE CHARGE ASSESSMENT
     0.00          0.00        0.00       0.00        81.08-1 LATE CHARGES
12-16-16  00-00  630  ATTORNEY ADVANCES
   262.50          0.00        0.00       0.00
12-16-16  00-00  630  ATTORNEY ADVANCES
   262.50          0.00        0.00       0.00
12-16-16  00-00  630  ATTORNEY ADVANCES
   262.50          0.00        0.00       0.00
12-16-16  00-00  630  ATTORNEY ADVANCES
    35.00          0.00        0.00       0.00
12-07-16  00-00  630  ATTORNEY ADVANCES
   175.00          0.00        0.00       0.00
12-07-16  00-00  630  ATTORNEY ADVANCES
   175.00          0.00        0.00       0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT              DATE 01/14/19
REQ BY OUM                                                          PAGE   15


FRANCISCO ROCHE
LOAN NUMBER:    ████6680

                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE     TRANSACTION              TRANSACTION               EFFECTIVE DATE
DATE       DATE    CODE                     DESCRIPTION               OF TRANSACTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   TRANSACTION    PRIN. PAID/        ESCROW PAID/ - - - - - - - - - - OTHER- - - - - - - - - -
   AMOUNT         BALANCE   INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
12-07-16  00-00  630  ATTORNEY ADVANCES
     175.00        0.00      0.00     0.00
12-07-16  00-00  630  ATTORNEY ADVANCES
     175.00        0.00      0.00     0.00
12-07-16  00-00  601  MISC. CORPORATE DISBURSEMENT
       0.63        0.00      0.00     0.00
11-29-16  00-00  601  MISC. CORPORATE DISBURSEMENT
       1.18        0.00      0.00     0.00
11-28-16  00-00  631  PROPERTY PRESERVATION
      15.00        0.00      0.00     0.00
11-16-16  03-10  152  LATE CHARGE ASSESSMENT
       0.00        0.00      0.00     0.00      81.08-1 LATE CHARGES
11-09-16  03-10  161  ESCROW ADVANCE
   2,512.42        0.00      0.00   2512.42
11-09-16  11-16  312  COUNTY TAX
   2,512.42-       0.00      0.00   2512.42-
                                   13931.00-  NEW PRINCIPAL/ESCROW BALANCES
11-01-16  00-00  601  MISC. CORPORATE DISBURSEMENT
       0.79        0.00      0.00     0.00
10-26-16  00-00  631  PROPERTY PRESERVATION
      15.00        0.00      0.00     0.00
10-26-16  00-00  601  MISC. CORPORATE DISBURSEMENT
       1.18        0.00      0.00     0.00
10-17-16  03-10  152  LATE CHARGE ASSESSMENT
       0.00        0.00      0.00     0.00      81.08-1 LATE CHARGES
10-03-16  00-00  630  ATTORNEY ADVANCES
     175.00        0.00      0.00     0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/19
REQ BY OUM                                                       PAGE  16


FRANCISCO ROCHE
LOAN NUMBER:    ████6680

                   ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS   DUE     TRANSACTION         TRANSACTION            EFFECTIVE DATE
DATE      DATE    CODE                DESCRIPTION            OF TRANSACTION
------------------------------------------------------------------------------
   TRANSACTION   PRIN. PAID/          ESCROW PAID/ -----------OTHER-------------
    AMOUNT        BALANCE    INTEREST    BALANCE   AMOUNT   CODE/DESCRIPTION
------------------------------------------------------------------------------
10-03-16  00-00  630  ATTORNEY ADVANCES
      175.00          0.00        0.00        0.00
10-03-16  00-00  630  ATTORNEY ADVANCES
      262.50          0.00        0.00        0.00
10-03-16  00-00  630  ATTORNEY ADVANCES
       43.75          0.00        0.00        0.00
10-03-16  00-00  630  ATTORNEY ADVANCES
      175.00          0.00        0.00        0.00
09-26-16  00-00  631  PROPERTY PRESERVATION
       15.00          0.00        0.00        0.00
09-16-16  03-10  152  LATE CHARGE ASSESSMENT
        0.00          0.00        0.00        0.00        81.08-1 LATE CHARGES
09-14-16  00-00  601  MISC. CORPORATE DISBURSEMENT
        5.00          0.00        0.00        0.00
08-26-16  00-00  631  PROPERTY PRESERVATION
       15.00          0.00        0.00        0.00
08-26-16  00-00  631  PROPERTY PRESERVATION
      510.00          0.00        0.00        0.00
08-02-16  00-00  631  PROPERTY PRESERVATION
      125.00          0.00        0.00        0.00
08-02-16  00-00  631  PROPERTY PRESERVATION
       85.00          0.00        0.00        0.00
07-29-16  00-00  630  ATTORNEY ADVANCES
       17.50          0.00        0.00        0.00
07-29-16  00-00  630  ATTORNEY ADVANCES
       35.00          0.00        0.00        0.00
07-29-16  00-00  630  ATTORNEY ADVANCES
       43.75          0.00        0.00        0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700  toll free
949.341.2200  fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 01/14/19
REQ BY OUM                                                         PAGE  17


FRANCISCO ROCHE
LOAN NUMBER:     ██████6680


                    ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE    TRANSACTION              TRANSACTION              EFFECTIVE DATE
DATE       DATE   CODE                     DESCRIPTION              OF TRANSACTION
-----------------------------------------------------------------------------------
   TRANSACTION   PRIN. PAID/          ESCROW PAID/ ------------OTHER-------------
     AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
-----------------------------------------------------------------------------------
07-29-16  00-00  630  ATTORNEY ADVANCES
      35.00       0.00        0.00       0.00
07-29-16  00-00  630  ATTORNEY ADVANCES
      43.75       0.00        0.00       0.00
07-29-16  00-00  630  ATTORNEY ADVANCES
      35.00       0.00        0.00       0.00
07-28-16  03-10  168  REPAY OF ESCROW ADVANCE
       0.00       0.00        0.00      736.47-      736.47   ESCROW ADVANCE ADJ
07-28-16  03-10  163  HAZARD INS REFUND
     736.47       0.00        0.00      736.47
                                      11418.58-   NEW PRINCIPAL/ESCROW BALANCES
07-27-16  00-00  631  PROPERTY PRESERVATION
      90.00       0.00        0.00       0.00
07-26-16  00-00  631  PROPERTY PRESERVATION
      15.00       0.00        0.00       0.00
07-11-16  00-00  633  MISC. F/C AND B/R EXPENSES
     250.00       0.00        0.00       0.00
07-08-16  03-10  161  ESCROW ADVANCE
     736.47       0.00        0.00      736.47
07-08-16  05-16  351  HAZARD INSURANCE
     736.47-      0.00        0.00      736.47-
                                      12155.05-   NEW PRINCIPAL/ESCROW BALANCES
07-08-16  00-00  766  MISC. REPAYMENT
      10.00       0.00        0.00       0.00
07-07-16  00-00  601  MISC. CORPORATE DISBURSEMENT
      10.00       0.00        0.00       0.00
06-27-16  00-00  631  PROPERTY PRESERVATION
      15.00       0.00        0.00       0.00
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 01/14/19
REQ BY OUM                                                         PAGE   18


FRANCISCO ROCHE
LOAN NUMBER:      ████6680

                 ACTIVITY FOR PERIOD 05/01/16 - 01/13/19
PROCESS    DUE     TRANSACTION           TRANSACTION              EFFECTIVE DATE
DATE       DATE    CODE                  DESCRIPTION              OF TRANSACTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   TRANSACTION   PRIN. PAID/         ESCROW PAID/ - - - - - - - - - - -OTHER- - - - - - - - - - - -
     AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
06-27-16  00-00  601  MISC. CORPORATE DISBURSEMENT
          10.00          0.00       0.00       0.00
06-16-16  00-00  630  ATTORNEY ADVANCES
          87.50          0.00       0.00       0.00
06-16-16  00-00  630  ATTORNEY ADVANCES
          87.50          0.00       0.00       0.00
06-13-16  00-00  630  ATTORNEY ADVANCES
       1,075.00          0.00       0.00       0.00
05-27-16  00-00  631  PROPERTY PRESERVATION
          15.00          0.00       0.00       0.00
05-26-16  00-00  631  PROPERTY PRESERVATION
           2.50          0.00       0.00       0.00
05-09-16  03-10  143  ADJUSTMENT
          NEW DUE DATE: 03-01-10, OLD DUE DATE: 03-01-11
05-09-16  00-00  745  CORP. ADVANCE ADJUSTMENT
       7,932.25          0.00       0.00       0.00
05-06-16  03-11  145  ADJUSTMENT
           0.00          0.00       0.00       0.00  11,418.58   ESCROW ADVANCE ADJ
05-06-16  03-11  142  LOAN SETUP
           0.00   239,717.82-       0.00       0.00
                  239,717.82                       NEW PRINCIPAL/ESCROW BALANCES
```

NMLS ID: 185729



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2242 fax
www.rushmorelm.com

**PAYOFF STATEMENT**

January 17, 2019

Patrick Butin
Rlms

Loan No:     ███████6680
Loan Type:  Conventional
Noteholder: Carlsbad Funding Mtg Tr

RE:                              Property Address:
Francisco Roche                  7200 SW 100th Ave
Sonny C Roche                    Miami FL 33173
7200 SW 100th Ave
Miami FL 33173

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE PAYOFF SHOWN BELOW.
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
These figures are good to January 31, 2019. (the "Good-Through Date")
This loan is due for the January 01, 2011 payment.
The current total unpaid Principal Balance is:       $       236,916.79
Interest at  6.75000%                                        130,582.42
Escrow/Impound Overdraft                                      23,848.59
Suspense Balance                                             -3,910.00
Unpaid Late Charges                                           1,297.28
Recoverable Corporate Advances                               26,661.44
Deferred Interest                                                  .00
Legal Fees & Cost                                               105.00
Recon/Recording Fee                                              36.50
Pi & Pp                                                          16.50
Est Fcl Fees & Cost                                              30.00
Est Legal Fees & Cost                                         4,165.00
Short Interest                                                     .00
 * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $        419,749.52

2nd Principal Balance                                              .00
Deferred Interest Balance                                         .00

The total unpaid Principal Balance includes the 2nd Principal Balance,
Deferred Interest Balance, Principal Reduction Amount (HAMP incentive)
and/or a Forbearance Amount.



EXHIBIT
"K"



EQUAL HOUSING
LENDER



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2242 fax
www.rushmorelm.com

Loan No: ██████6680
Property Address:
7200 SW 100th Ave
Miami FL 33173

If the loan is less than 30 days past due the Principal Reduction Amount is deducted from the total amount due.

Funds received on or after January 31, 2019 will require an additional $ 43.81 interest per Day.

Payoff funds being sent by mail must be directed to:

> Rushmore Loan Management Services LLC
> Attn: Payoff Department
> 15480 Laguna Canyon Road Suite 100
> Irvine, CA 92618

These figures are subject to final verification by the Noteholder. Figures may be adjusted if any check/money order previously received is rejected by the institution upon which it was drawn.

Any amounts included in the Estimated Fees and Costs section of this letter anticipate certain actions we must take before the Good-Through Date pursuant to our rights and duties under the Loan Documents. These Estimated Fees and Costs are expenses related to the servicing of your loan we have already incurred but not yet received an invoice for or for which we anticipate incurring on or before the Good-Through Date. There may be additional fees incurred for which you are responsible that are unknown as of the date of this letter and which are not included above. Estimated Fees and Costs may include, but are not limited to, expenses for items such as escrow advances for property taxes, insurance, legal fees and costs, or other advances necessary and permissible under the Loan Documents. You do not have to pay for any fees or costs not incurred by the time your full payment is received. In the event you submit a payment for more than the total amount owed at the time the payment is received, we will refund you the difference.



EQUAL HOUSING
LENDER



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2242 fax
www.rushmorelm.com

Loan No:  ███████6680
Property Address:
7200 SW 100th Ave
Miami FL 33173

Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due.  A late charge of $ 81.08 will be
assessed 15 days after a current payment is due and should be added
to the payoff total if received after that time.  All past due amounts
are included in the above figures.

If this property is sold, please provide the seller's forwarding address.

PAYOFF DEPARTMENT

XP011-079/0SP



EQUAL HOUSING
LENDER



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2242 fax

www.rushmorelm.com

## RUSHMORE LOAN MANAGEMENT SERVICES LLC

## WIRING INSTRUCTIONS

Please wire funds to:

Institution:            Wells Fargo

ABA Routing Number:     Bank 121000248
Account Number:         ████████9028
Reference:              Loan Number
                        Borrower Name


Attn:                   Cashiering Department
Beneficiary:            Rushmore Loan Management LLC
                        15480 Laguna Canyon Road
                        Suite 100
                        Irvine, CA 92618


Customer Service:       888-504-6700



## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

If you have any other mortgage loans secured by the same property not serviced by Rushmore, please contact your other servicer directly to discuss any possible loss mitigation options that may be available to you.

If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.

**LEGAL NOTIFICATION:** Rushmore Loan Management Services LLC may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

### Notice of Error Resolution & Information Request Procedures

The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC (RLMS). Please keep this document for your records.

*If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:*

**Rushmore Loan Management Services LLC**
P.O. Box 52262
Irvine, California 92619-2262

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error or a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

## HUD STATEMENT

Pursuant to section 169 of the Housing and Community Development Act of 1987, you may have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may obtain a list of the HUD approved housing counseling agencies by calling the HUD nationwide toll free telephone at 1-800-569-4287.

### Equal Credit Opportunity Act Disclosure

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552.

## STATE SPECIFIC NOTICES

**The following notice applies to Arkansas residents only:**

Please note that Rushmore Loan Management Services LLC is licensed in Arkansas and that complaints about Rushmore Loan Management Services LLC may be submitted to the Arkansas Securities Department via the Department's website (http://www.securities.arkansas.gov/) or toll-free 1-800-981-4429.

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car.
Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:
Irvin Borenstein
7200 S. Alton Way, #B180
Centennial, CO 80112
303-309-3839

**The following notice applies to Hawaii residents only:**

Rushmore is licensed by the Division of Financial Institutions for the State of Hawaii. A borrower may file a complaint about Rushmore Loan Management Services with the Commissioner:

**Division of Financial Institutions**
Department of Commerce and Consumer Affairs
King Kalakaua Building
335 Merchant Street, Rm. 221
Honolulu, HI 96813

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to North Carolina residents only:**

**If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the North Carolina Office of the Commissioner of Banks website,** www.nccob.gov .

**RUSHMORE LOAN MANAGEMENT SERVICES LLC Branch Addresses:**
California Branch: 15480 Laguna Canyon Road, Suite 100, Irvine CA 92618
Texas Branch: 1755 Wittington Place, Suite 400, Dallas TX 75234
Oklahoma Branch: 2000 North Classen Blvd, Suite N3400, Oklahoma City, OK 73106

**Collection Agency**
CA Office License Number: 103651
TX Office License Number: 112248
OK Office License Number: 113559

**The following notice applies to New York residents only:**

NOTICE PURSUANT TO NEW YORK STATE BANKING REGULATION 419
Rushmore is registered with the Superintendent of Banks for the State of New York. A borrower may file a complaint about Rushmore Loan Management Services with the New York State Department of Financial Services. A borrower may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS Unique ID Number 185729

**The following notice applies to Texas residents only:**

Statement: Pursuant to Texas Finance Code Chapter 158.101, a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan. COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 North Lamar, Suite 201, Austin, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550

**The following notice applies to Oregon residents only:**

Pursuant to Oregon Revised Statutes 86A.324(I)(i), the Director of the Department of Consumer and Business Services prescribes by rule. Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. If you have a question or complaint against a company or individual in the financial services industry, you may file a complaint by calling the Department at 1-866-814-9710 or by visiting http://dfr.oregon.gov. You may also send your complaints by fax to 503-947-7862, or by mail to: PO Box 14480, Salem, OR 97309-0405.

**The following notice applies to Pennsylvania residents only:**

The lender shall retain a security interest in the residential real estate unless and until the debt is fully satisfied and the security interest is released.

**The following notice applies to Wisconsin residents only:**

This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

Rev 11152018