**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-24872-BLOOM/Louis**

FRANCISCO ROCHE and
SONNY C. ROCHE,

      Plaintiffs,

v.

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC and CARLSBAD
FUNDING MORTGAGE TRUST,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendants Rushmore Loan Management Services, LLC ("Rushmore") and Carlsbad Funding Mortgage Trust's ("Carlsbad") (collectively, "Defendants") Motion to Dismiss, ECF No. [23] ("Motion"). Plaintiffs Francisco Roche and Sonny C. Roche (collectively, "Plaintiffs") filed a Response to the Motion, ECF No. [26] ("Response"), to which Defendants did not file a Reply. The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons discussed below, Defendants' Motion is denied.

## I. BACKGROUND

Plaintiffs initiated this action on November 25, 2019, asserting claims against Rushmore for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and claims against both Defendants' for violations of the Florida Consumer Collection Practices Act, Fla. Stat.

§ 559.55, *et seq.* ("FCCPA") and the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"). *See* ECF No. [1] ("Complaint"). The Complaint alleges the following facts:

In May 1997, Plaintiffs purchased their home in Miami, Florida. *Id.* at 5, ¶ 20. In October 2007, Plaintiffs refinanced their home through a loan secured by a mortgage on the property. *Id.* at 5, ¶ 21; *id.* at 21-35 ("Mortgage Agreement"); *id.* at 36-38 ("Mortgage Note"). In 2009, while Mr. Roche was receiving social security disability payments after having been deemed permanently disabled, Mrs. Roche became critically ill, which resulted in Plaintiffs' income being significantly reduced. *Id.* at 5, ¶ 22. On or around March 1, 2010, Plaintiffs defaulted on their loan. *Id.* at 5, ¶ 23. On September 11, 2010, a foreclosure action was initiated against Plaintiffs in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, *id.* at 5, ¶ 25, and Plaintiffs retained counsel to defend them in the foreclosure action, *id.* at 5, ¶ 26.

Effective May 1, 2016, the rights as the servicer of Plaintiffs' loan were assigned to Rushmore, *id.* at 6, ¶ 29; *id.* at 43-44 ("Rushmore Servicing Assignment"), and on around June 17, 2016, the Mortgage Agreement and the Mortgage Note were assigned to Wilmington Savings Fund Society ("Wilmington") as trustee for Carlsbad, *id.* at 6, ¶ 30; *id.* at 45-46 ("Carlsbad Mortgage Assignment"). "Thus, Rushmore became the servicer of the loan while the Plaintiffs' loan was already alleged to be in default. Carlsbad also became the owner of the loan while it was already alleged to be in default." *Id.* at 6, ¶ 31.

Around April 22, 2016, "Rushmore, on behalf of Carlsbad and Wilmington, sent a 'Notice of Assignment, Sale or Transfer of Servicing' letter to [Plaintiffs] despite their being represented by counsel," which identified the current creditor as Wilmington, as trustee for Carlsbad. *Id.* at 6, ¶ 32; *id.* at 47-49 ("Notice of Servicing Assignment"). Further, on or around May 24, 2016, "Rushmore, on behalf of Carlsbad and Wilmington, sent Plaintiffs a Summary of Total Debt

Composition and provided an itemization of the total amount due and owing on the mortgage as $360,199.61," which included the current principal balance in the amount of $239,717.82, current unpaid accrued interest of $101,130.96, and "Other Charges" of $19,350.83. *Id.* at 6, ¶ 33; *id.* at 50 ("Summary of Total Debt Composition").

On December 20, 2016, Plaintiffs' previous counsel was replaced by Amador & Cuellar, PLLC ("Plaintiffs' Counsel"), and Plaintiffs' Counsel filed their notice of appearance on the same day. *Id.* at 6, ¶ 34. Despite being represented by counsel, however, Defendants continued calling and sending mortgage statements and correspondence to Plaintiffs in an attempt to collect on the mortgage. *Id.* at 6, ¶ 35. After applying numerous times for a modification, on June 5, 2018, Plaintiffs were granted a Trial Modification, which called for monthly payments in the amount of $2,875.00 for six months. *Id.* at 6-7, ¶ 36. "Plaintiffs repeatedly questioned the total amount outstanding, the principal balance, fees and the payment balance." *Id.* at 7, ¶ 37.

"After receiving the approval for the trial modification, Plaintiffs again requested a payoff amount and a breakdown of the total amounts due," because they were confused by the $37,000.00 discrepancy between the total plan arrears set forth on the trial modification agreement in the amount of $208,097.14, and the total outstanding amount due on their mortgage statement of $171,090.53. *Id.* at 7, ¶ 38; *id.* at 51-54 ("June 11, 2018, Statement"). Plaintffs were advised that the breakdown and the total amount due on the loan were unavailable at that time. *Id.* at 7, ¶ 39. "Plaintiffs repeatedly disputed the amounts in writing of the principal balance and the arrears." *Id.* at 7, ¶ 40. "Rushmore advised that they would clarify the numbers before the final modification was provided. Plaintiffs executed the agreement and proceeded to make all payments in furtherance of the Trial Modification, as indicated." *Id.* at 7, ¶ 41.

On or around December 10, 2018, Plaintiffs received notice of the Final Modification, which "stated a new principal balance of $407,409.14, consisting of the unpaid principal balance of the original obligation, plus accrued but unpaid interest." *Id.* at 7, ¶ 43; *id.* at 55-63 ("Final Modification"). "The Final Modification also referred to the balance as of the date of refinancing, 'the unpaid principal balance of the original obligation, plus accrued but unpaid interest, secured by the existing mortgage is [$355,947.19].'" *Id.* at 7-8, ¶ 43; *id.* at 60. The original principal balance was $239,000.00. *Id.* at 8, ¶ 44. "During the trial modification period the Defendant had continued sending bills directly to Plaintiffs. The figures on the mortgage statements, the figures on the final modification, and the figures on the payoff . . . all differed on the outstanding amounts due, the principal balance, fees charged, etc." *Id.* Plaintiffs were also being billed for items they believed were erroneous. *Id.* Thus, Plaintiffs made an additional request for an explanation of the amounts due and a full payment history. *Id.*

On December 10, 2018, "Plaintiffs requested a payoff and payment history directly from Rushmore and through Defendants' counsel." *Id.* at 8, ¶ 45. Plaintiffs were advised that the information would be provided within fourteen days and that, in the meantime, they should continue making the modified payments. *Id.* at 8, ¶ 46. Moreover, Plaintiffs were "informed that the time to sign the final modification would be extended pending the payoff and payment history being provided. No deadline to sign the trial modification was provided to Plaintiffs." *Id.* at 8, ¶ 47. While awaiting a response, Plaintiffs continued to honor the agreement and make payments to Defendants, including the payment for January 2019, despite their concerns about the amounts provided. *Id.* at 8, ¶¶ 48-49.

On or around January 10, 2019, Plaintiffs reached out to Defendants' counsel again for the payoff and payment history. *Id.* at 8, ¶ 50. On approximately January 14, 2019, "Rushmore sent

Plaintiffs an incomplete payment history," that "only went as far back as May 6, 2016," despite Plaintiffs' request for "the full payment history from the origination of the loan in October of 2007 to the present." *Id.* at 8-9, ¶ 51; *id.* at 64-85 (the "Incomplete Payment History"). Plaintiffscontinued to request a full payment history and the payoff letter. *Id.* at 9, ¶ 52.

> On or about January 22, 2019, Plaintiffs again contacted Rushmore regarding the payoff letter and the full payment history and were told that the permanent final modification was denied for failure to sign and return to them. Rushmore stated that Plaintiffs "would never again be considered for a modification." Plaintiffs protested that this was the first time they were told that they had a certain date to sign or forfeit the modification, that they were pending the payoff letter and payment history, and that they had repeatedly requested this information either through Defendants' counsel or Defendant. They had requested these items because they had legitimate concerns about the total amount they were being asked to pay and simply wanted a payoff letter and or payment history to verify the amounts they were signing off on.

*Id.* at 9, ¶ 53.

Plaintiffs were advised for the first time on January 22, 2019, "that the Final Modification was in jeopardy due to their request for a complete payment history and a breakdown of the Principal Balance. Further, on January 31, 2019, Plaintiffs were informed that their Final Modification had been denied due to the failure to submit the signed modification. *Id.* at 9, ¶ 55. Plaintiffs continued to request a full payment history and payoff letter, and they continued to make their mortgage payments, including the February 2019 payment. *Id.* at 9,e compl ¶¶ 55-56. In March 2019, the February 2019 payment was returned and Plaintiffs "were advised that Defendants would not accept any further payments. Plaintiffs continued to request a payoff letter and a full payment history." *Id.* at 9-10, ¶ 57.

> Defendants [misled] Plaintiffs to their detriment. Plaintiffs never received a response to their request for a full payment history, the Final Modification was revoked and Plaintiffs were was told they could never re-apply for a modification. Defendants failed to comply with payoff request deadlines and failed to provide Plaintiffs with a complete payment history and then denied the [Plaintiffs'] modification based on [Plaintiffs'] reliance on [Defendants'] promises that the deadline would be extended pending the information requested.

.... On or about June 13, 2019, [Plaintiffs'] counsels['] office was advised that a payoff letter had been sent on January 18, 2019. However, [Plaintiffs'] counsels['] office was unaware of the existence of this payoff letter until June 13, 2019 because the letter did not contain [Plaintiffs'] name in the subject heading, the payoff was not emailed to the person in [Plaintiffs'] counsels['] office that had been requesting the payoff or to the designation email provided for correspondence and Defendants never advised Plaintiffs during their telephonic communications requesting said letter.

*Id.* at 10, ¶¶ 58-59.

Despite being represented, Plaintiffs continued to receive mortgage statements requesting payments and reflecting different amounts owed from those reflected on Defendants' payoff letter, which further aggravated Plaintiffs' concerns and confusion regarding the amounts owed. *Id.* at 10, ¶ 60. The payoff letter indicated that, as of January 31, 2019, the amount required to pay the loan off in full was $419,749.52, which included $4,195.00 in estimated costs and fees, "Est. Fees & Cost" of $30.00, and "Est Legal Fees & Cost" of $4,165.00. *Id.* at 10, ¶¶ 61-62; *id.* at 86-92 ("Payoff Letter"). "This amount also included other ambiguous amounts that could be estimates and may not have actually been incurred, including [a] 'Recoverable Corporate Advances' charge of $26,661.44," for which Defendants failed to provide any information or explanation, *id.* at 10-11, ¶ 63, and unpaid late charges of $1,297.28, *id.* at 11, ¶ 64. The Payoff Letter also indicated that funds received after January 31, 2019, would incur an additional $43.81 per day in interest. *Id.* at 11, ¶ 65. "These 'estimated' amounts were based on projected amounts due in the event Plaintiffs did not actually pay before a certain future date and certain events relating to the foreclosure occurred." *Id.* at 11, ¶ 66.

Plaintiffs' Complaint asserts eight counts: Count I (Rushmore's violation of § 2605(k) of RESPA); Count II (Rushmore's violation of § 1692f of FDCPA); Count III (Rushmore's violation of § 1692c(a)(2) of FDCPA); Count IV (Rushmore's violation of § 1692e of FDCPA); Count V (Rushmore's violation of § 1692e of FDCPA); Count VI (Rushmore's violation of § 559.72(9) of

FCCPA); Count VII (Carlsbad's violation of § 559.72(9) of FCCPA); and Count VIII (Defendants' violations of Regulation Z, 12 C.F.R. § 1026.36(c)(3), and § 1639(g) of TILA). *See generally id.*

Defendants' Motion now seeks dismissal of Counts I through VII of Plaintiffs' Complaint,[1] arguing that each Count fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs, however, argue that each challenged Count of the Complaint is sufficiently pled.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) that requests dismissal for failure to state a claim upon which relief can be granted.

---

[1] Although Defendants argue that the entire Complaint should be dismissed, their Motion is entirely devoid of any arguments on Count VIII. *See generally* ECF No. [23]. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The Court] will not do his research for him." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (citation omitted). Because Defendants have failed to support — or even address — any arguments regarding the dismissal of Count VIII, the Court will not address Count VIII in this Order.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

## III. DISCUSSION

In the instant Motion, Defendants move to dismiss Counts I through VII of Plaintiffs' Complaint because each Count fails to state a claim upon which relief can be granted.[2] In their

---

[2] It is worth noting at the outset that Defendants' Motion is completely deficient in that it contains no statement setting forth the relevant facts in this case; it devotes about one paragraph, if that, to substantive arguments for almost all challenged Counts of Plaintiffs' Complaint; it contains minimal citations to relevant allegations from the Complaint or to supporting caselaw and, of the citations provided, most are citations to cherry-picked quotes from cases with no application or explanation of their relevance; and it fails to engage in any meaningful substantive analysis of the claims asserted. The inadequacy of this

Response, Plaintiffs argue that Defendants' Motion should be denied because each Count of the Complaint is sufficiently alleged. Alternatively, should the Court grant the Motion, Plaintiffs request leave to amend their Complaint to cure any deficiencies. The Court will address each challenged Count of the Complaint individually below.

### A. Count I: Rushmore's Violation of § 2605(k) of RESPA

In their Motion, Defendants first argue that Count I should be dismissed because it fails to establish the elements necessary to assert a claim under RESPA.

> Here, the Complaint does not dispute that there was a response to the QWR. Rather the Complaint alleges that the Plaintiffs' [sic] dispute the amount stated within the payoff. Further, the Complaint establishes that the actions done were not by Rushmore by rather Robertson Anschutz & Snied ("RAS"), and therefore Plaintiffs' seek to hold vicariously liable for RAS' conduct. A showing of actual authority is necessary and requires: (1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *See Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003). Here the Complaint fails to establish these elements.

ECF No. [23] at 4.[3] Plaintiffs, on the other hand, contend that Rushmore violated RESPA by failing to provide the requested information in an accurate, clear, and conspicuous manner when it charged

---

briefing, on its own, warrants denial of the Motion.

The Court reminds Defendants that a "movant bears the burden of showing that dismissal for failure to state a claim is warranted." *Lee v. Monroe Cty. Heritage Museum, Inc.*, 998 F. Supp. 2d 1318, 1322 n.3 (S.D. Ala. 2014) (citing *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998); *Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1314 n.26 (S.D. Ala. 2012)). Bald conclusions, like those offered by Defendants here, "present nothing for judicial consideration. Certainly the Court will not supply legal or analytical support the defendant has declined to offer itself." *Id.* at 1322. Further, "[a] passing reference to an issue in a brief [is] insufficient to properly raise that issue." *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005); *see also Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (explaining that a party's "brief must include an argument containing [their] contentions and the reasons for them, with citations to the authorities and parts of the record on which the [party] relies"); *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made . . . . Rather, the onus is upon the parties to formulate arguments . . . ." (citations omitted)); *Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (holding that a party's "simple contention that California law controls does not present an argument based on California law" because an "issue raised perfunctorily without citation to authority constitutes waiver of [the] issue").

[3] Given Defendants' bare bones briefing on Count I, the Court will only address the issues

fees and costs not yet incurred and demanded payment of such fees for Plaintiffs to pay off their loan. Further, Plaintiffs note that Rushmore's response to Plaintiffs' request was on Rushmore letterhead, contained wiring instructions to Rushmore, and was signed by Rushmore's Payoff Department, and that RAS was simply the entity that handed over the information.

In particular, Plaintiffs claim that Rushmore violated § 2605(k) of RESPA through its violation of RESPA's implementing regulation, 12 C.F.R. § 1024, *et seq.* ("Regulation X"). RESPA "is a consumer protection statute that regulates the real estate settlement process." *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (citing 12 U.S.C. § 2601(a)). "RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires." *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010) (citation omitted). Moreover, "RESPA is to be construed liberally to best serve Congress's intent." *Bracco v. PNC Mortg.*, No. 8:16-cv-1640-T-33TBM, 2016 WL 4507925, at *2 (M.D. Fla. Aug. 29, 2016) (citing *McLean*, 398 F. App'x at 471). Relevant here, § 2605 of RESPA governs the servicing of mortgage loans and administration of escrow accounts, and § 2605(k) implicates Regulation X by providing, in relevant part, that "[a] servicer of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." *See* 12 U.S.C. § 2605(k)(1)(E).

Pursuant to Regulation X, disclosures "must be clear and conspicuous, in writing, and in a form that a recipient may keep." 12 C.F.R. § 1024.32(a)(1). Upon receiving a borrower's request for information ("RFI") relating to the servicing of the mortgage loan, § 1024.36 requires servicers to respond by:

---

presented — namely, whether the Complaint alleges that Plaintiffs dispute the amount stated in the Payoff Letter and whether the Complaint establishes that RAS was responsible for the offending conduct.

> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. §§ 1024.36(d)(1)(i)-(ii). Likewise, § 1024.38 sets forth general servicing policies, procedures, and requirements:

> (a) Reasonable policies and procedures. A servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section.
> (b) Objectives —
> (1) Accessing and providing timely and accurate information. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:
> (i) Provide accurate and timely disclosures to a borrower as required by this subpart or other applicable law;
> . . . .
> (iii) Provide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan.

12 C.F.R. §§ 1024.38(a), (b)(1)(i), (b)(1)(iii).

If a loan servicer violates § 2605, an aggrieved party may recover: "(A) any actual damages to the borrower as a result of the failure; and (B) any additional [statutory] damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1).

To sufficiently state a claim under RESPA for a servicer's failure to respond, a plaintiff must allege that: "(1) the defendant is a loan servicer under the statute, (2) the plaintiff sent defendant a valid QWR, (3) [] the QWR relate[d] to servicing of the loan, (4) defendant failed to adequately respond within the statutory period, and (5) plaintiff has suffered actual or statutory damages." *Rodriguez v. Ocwen Loan Servicing, LLC*, No. 15-22101-CIV, 2015 WL 13776172, at *5 (S.D. Fla. Dec. 14, 2015) (citing *Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp.

2d 1299, 1305-06 (M.D. Fla 2012), *aff'd*, 523 F. App'x 675 (11th Cir. 2013); *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010) (per curium)), *report and recommendation adopted*, No. 15-22101-CIV, 2016 WL 11543251 (S.D. Fla. Jan. 8, 2016). Further, an RFI can qualify as a QWR. *See Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1353-54 (S.D. Fla. 2015); *see also* 12 C.F.R. § 1024.36(a) ("A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request.").

The Court constues Defendants' first argument as one disputing the allegation that Rushmore failed to adequately respond to Plaintiffs' RFI. However, Defendants not only misconstrue the allegations in the Complaint, but also misunderstand the law on this issue. First, with regard to the allegations in the Complaint, Plaintiffs do not simply take issue with the amount stated in the Payoff Letter; instead, Plaintiffs clearly allege that they believed many of the vague or estimated fees and costs included were erroneous. *See, e.g.*, ECF No. [1] at 7, ¶¶ 38, 44. Moreover, the Court takes these well-pled allegations as true at the motion-to-dismiss stage. *See Miccosukee Tribe of Indians of Fla.*, 304 F.3d at 1084.

With regard to the law on what constitutes an adequate response by a loan servicer for a RESPA claim, it is not sufficient for a loan servicer to simply respond to an RFI, as Defendants seem to believe. Instead, whether a loan servicer adequately responded to a borrower's QWR depends on whether the response "adequately contains the information Plaintiffs requested or otherwise provides 'a statement of [Defendants'] reasons' responsive to Plaintiffs' specific inquiry." *Walker v. Branch Banking & Tr. Co.*, 237 F. Supp. 3d 1326, 1332 (S.D. Fla. 2017) (quoting *Whittaker v. Wells Fargo Bank, N.A.*, No. 6:12-cv-98-Orl-28GJK, 2014 WL 5426497, at

*8 (M.D. Fla. Oct. 23, 2014)). Here, the Complaint alleges that Rushmore failed to adequately respond to Plaintiffs' QWR because its response included vague or estimated costs and fees without any explanation as to what services these fees were incurred for. ECF No. [1] at 10-11, ¶¶ 61-65; *id.* at 14, ¶ 80. Moreover, Plaintiffs allege that Rushmore's response was inadequate because it "failed to provide information to Plaintiff[s] in an accurate, clear and conspicuous manner, by charging fees not yet incurred and demanding Plaintiffs pay these fees to payoff their loan." *Id.* at 14, ¶ 81; *id.* at 10-11, ¶ 63. The Court concludes that these allegations are sufficient to establish a plausible claim that Rushmore failed to adequately respond to Plaintiffs' QWR. *See Rodriguez*, 2015 WL 13776172, at *5.

In addition, the Court is unpersuaded by Defendants' argument that the offending conduct alleged cannot be attributed to Rushmore because this conduct was committed by RAS. The Complaint specifically alleges that "***Rushmore***, through Robertson Anschutz & Sneid ("RAS"), responded to Plaintiff's written request with information . . . ." ECF No. [1] at 14, ¶ 80 (emphasis added). Likewise, all of the additional relevant allegations in the Complaint describe Rushmore's conduct, not RAS's conduct. *Id.* at 7, ¶ 41; *id.* at 9-10, ¶¶ 53-54, 57. These allegations are also buttressed by the exhibits attached to Plaintiffs' Complaint, which reflect communications by Rushmore to Plaintiffs. *See generally id.* at 47-92. Notably, Rushmore's response to Plaintiffs' QWR was on Rushmore letterhead, contained wiring instructions to Rushmore, and was signed off by Rushmore's Payoff Department. *Id.* at 86-92. This Court will not dismiss this Count based on Defendants' bare-bones, unsupported argument. Defendants' Motion is denied as to Count I.

### B. Count II: Rushmore's Violation of § 1692f of the FDCPA

Defendants' argument with regard to Count II states, in full:

Count II seeks violations of the FDCPA for numerous documentation [sic]. Rushmore seeks for dismissal for the allegations specifically related to mortgage

statements. Rushmore cannot be liable for sending mortgage statements because sending these statements does not amount to "debt collection" where, as here, the statements do not "rise above the 'garden variety' type of statement required by TILA" and do not include "strong demands for payment." *Green v. Specialized Loan Servicing, LLC*, 766 F. App'x 777, 784-85 (11th Cir. 2019). Additionally, to the extent that these claims are based on the payoff statements sent to Plaintiff at his request, they are due to be dismissed because "[s]tatements of account are not debt collection activity; rather[,] they are normal incidents of loan servicing." *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1242 (S.D. Fla. 2015); *see also Czaban v. Bayview Loan Servicing, LLC*, 2019 WL 5960633 (N.D. Fla. 2019).

ECF No. [23] at 4.

Plaintiffs, however, argue that the mortgage statements and Payoff Letter that Rushmore sent were attempts at debt collection based on the language in these correspondences. Moreover, Plaintiffs contend that the fees and costs listed in these statements and others, which included estimated fees not yet incurred, were not authorized by the Mortgage Agreement or the Mortgage Note.[4]

The FDCPA "regulates what debt collectors can do in collecting debts," *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015), and it was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses," 15 U.S.C. § 1692(e). Thus, the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," through, for example, collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.

---

[4] Because Defendants seemingly only challenge whether these communications were "debt collection" activity, the Court need not address Plaintiffs' remaining arguments regarding the Mortgage Agreement and the Mortgage Note.

§ 1692f(1); *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Under the FDCPA, a debt collector who "fails to comply with any provision . . . with respect to any person is liable to such person" for "actual damage[s]," costs, "a reasonable attorney's fee as determined by the court," and "additional damages." 15 U.S.C. § 1692k(a).

"A claim under the FDCPA is evaluated from the perspective of the least sophisticated consumer." *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1244 (M.D. Fla. 2019) (citing *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258-59 (11th Cir. 2014)). "The inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is whether the 'least sophisticated consumer' would have been deceived by the debt collector's conduct." *Green*, 766 F. App'x at 781 (quoting *Crawford*, 758 F.3d at 1258); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) ("'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).

In order to prevail on an FDCPA claim, a plaintiff must allege that: (1) they were the object of collection activity arising from consumer debt; (2) the defendant is a "debt collector" as defined in the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA. *Dunham v. Lombardo, Davis & Goldman*, 830 F. Supp. 2d 1305, 1306-07 (S.D. Fla. 2011) (citing *Wise v. Cach*, No. 09-80972-CIV, 2010 WL 1257665, at *2 (S.D. Fla. Mar. 26, 2010)).

The issues raised as to Count II center around the first element of an FDCPA claim, which "has two requirements — there must be collection activity and this activity must relate to a consumer debt." *Id.* at 1307 (citing *Buckley v. Bayrock Mortg. Corp.*, No. 1:09-cv-1387-TWT, 2010 WL 476673, at *6 (N.D. Ga. Feb. 5, 2010)). Further, with regard to debt collection activity,

correspondence that merely seeks to communicate information or relates to the enforcement of a security interest does not fall within the ambit of the FDCPA. *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1325-28 (S.D. Fla. 2014). In determining whether a communication is "'in connection with the collection of any debt,' courts should look to the language of the letters in question, specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the [sender] was attempting to collect a debt and was acting as a debt collector." *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012). A "communication can have more than one purpose, for example, providing information to a debtor as well collecting a debt." *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015).

The FDCPA does not explain what is meant by "in connection with the collection of any debt," and the Court of Appeals for the Eleventh Circuit has not established a bright-line rule. Nevertheless, "courts have developed a factor-based analysis that takes into account: '(1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.'" *Bohringer*, 141 F. Supp. 3d at 1240-41.

Here, Count II of Plaintiffs' Complaint refers to the estimated fees on the Payoff Letter, the various fees on the Incomplete Payment History, and the various fees on the monthly statements, all of which are attached as exhibits to the Complaint, as those fees upon which

Rushmore sought to collect. ECF No. [1] at 14, ¶ 86. In reviewing the relevant exhibits, the Court concludes that these communications constituted debt collection attempts. Specifically, the June 11, 2018, Statement contains a section titled "Delinquency Notice," which states that "failure to bring the loan current may result in fee's and foreclosure" and outlines the number of days Plaintiffs were delinquent on their loan. ECF No. [1] at 53. This June 11, 2018, Statement also highlights in bold the total amount due with the following language: "You must pay this amount to bring your loan current" in an attempt to induce payment by the Plaintiffs. *Id.* Further, the front page of the June 11, 2018, Statement expressly states that Rushmore "is a Debt Collector, who is attempting to collect a debt." *Id.* at 51. Therefore, Plaintiffs have alleged a plausible FDCPA claim because these mortgage statements were not sent solely for informational purposes, but rather were "in connection with the collection of a debt." *See Caceres*, 755 F.3d at 1302. As such, Defendants' Motion is denied as to Count II.

## C. Count III: Rushmore's Violation of § 1692c(a)(2) of the FDCPA

Defendants next argue that Count III should be dismissed because "the Complaint fails to establish actual knowledge to Rushmore, and the attachments do not show any communication from [Plaintiffs' Counsel] to Rushmore. Essentially, the Complaint again seeks to hold Rushmore liable because of RAS, which is improper, and the Count must be dismissed." ECF No. [23] at 6. Plaintiffs respond that the Payoff Letter was sent to Plaintiffs' Counsel because Rushmore knew Plaintiffs were represented. Moreover, Plaintiffs argue that the Complaint adequately alleges that Rushmore was put on notice that Plaintiffs were represented several times during the relevant time period in this case.

"The FDCPA prohibits a debt collector from communicating with a consumer it knows to be represented by counsel without the consumer's consent or the express permission of the court."

*Lewis v. Hiday & Ricke, P.A.*, No. 18-cv-62336, 2019 WL 4731936, at *2 (S.D. Fla. July 31, 2019) (citation omitted). "To prevail on a claim under 15 U.S.C. § 1692c(a)(2) . . . , a debtor must prove that: (1) a debt collector communicated with a consumer; (2) in connection with the collection of a debt; (3) where the debt collector had actual knowledge that the consumer is represented by an attorney with respect to such debt; and (4) the debt collector had knowledge, or could readily ascertain, the attorney's name or address." *Castellanos v. Portfolio Recovery Assocs., LLC*, 297 F. Supp. 3d 1301, 1310 (S.D. Fla. 2017) (citing 15 U.S.C. § 1692c(a)(2); *Wolhuter v. Carrington Mortg. Servs., LLC*, No. 8:15-cv-552-MSS-TBM, 2015 WL 12819153, at *5 (M.D. Fla. 2015)).

Under § 1692c(a)(2), a plaintiff must demonstrate that "a debt collector 'knows' or has 'knowledge' that the consumer is represented by an attorney 'with respect to' a debt." *Id.* at 1309 (quoting 15 U.S.C. § 1692c(a)(2)). "[C]ourts have uniformly interpreted the knowledge requirement to require that a debt collector have 'actual knowledge' of attorney representation 'with respect to' the specific account at issue." *Id.* (quoting *Wolhuter*, 2015 WL 12819153, at *4-5); *see also Nordwall v. PNC Mortg.*, No. 2:14-cv-747-FTM-CM, 2015 WL 4095350, at *3 (M.D. Fla. July 7, 2015) (noting that § 1692c(a)(2) requires proof of the debt collector's actual knowledge that the plaintiff was represented by counsel); *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1343 (M.D. Fla. 2010) (same).

The Complaint alleges that Plaintiffs' Counsel filed a notice of appearance on December 20, 2016. ECF No. [1] at 6, ¶ 34. Further, Plaintiffs allege that on or around June 13, 2019, Plaintiffs' Counsel was informed that Rushmore had sent a Payoff Letter on January 18, 2019, and that Plaintiffs' Counsel had not learned of the Payoff Letter, in part, because it was not e-mailed to the person in Plaintiffs' Counsel's office who had been making the payoff requests. *Id.* at 10, ¶ 59. These facts, taken as true, are sufficient to state a plausible claim for relief based on the

inference that Rushmore knew Plaintiffs were represented by counsel. *See Castellanos*, 297 F. Supp. 3d at 1312 (concluding that counsel's notice of appearance, their negotiation of the settlement, the inclusion of counsel's name on the signature block of the settlement agreement, and the fact that the defendant had mailed two letters to counsel conclusively established that the defendant knew the plaintiff was represented); *see also Nordwall*, 2015 WL 4095350, at *3 (finding that notice of appearance combined with cease-and-desist letter listing two attorneys' names, as well as numerous other email correspondence, "put Defendant on notice that Plaintiff was represented by counsel"); *Carbonell v. Frederick J Hannah & Assocs., P.C.*, No. 1:14-cv-21689, 2014 WL 12580524, at *2 (S.D. Fla. Aug. 1, 2014) (dismissing FDCPA and FCCPA claims with leave to amend where plaintiff alleged that his creditor had actual knowledge that "Plaintiff was represented by an attorney because he had entered notices of appearance in her state court cases" against other creditors, as plaintiff did not link the other creditors to the defendant in the instant case); *but see Wolhuter*, 2015 WL 12819153, at *5 (dismissing FDCPA claim where the plaintiff was represented by counsel in a foreclosure case against a different defendant, as there was nothing to indicate that the defendant knew of the notice of appearance in the foreclosure case). Accordingly, the Motion is denied as to Count III.

### D. Counts IV, V, & VI: Rushmore's Violations of § 1692e of the FDCPA & Rushmore's Violation of § 559.72(9) of the FCCPA[5]

In their Motion, Defendants also argue that Counts IV, V, and VI should be dismissed, stating in full that:

> Count IV seeks damages under the FDCPA § 1692(e) [sic] due to correspondence sent by RAS, and Count V seeks the same relief for alleged communication send [sic] by Rushmore which included fees. The Counts are nearly identical. . . . First, Count IV should be dismissed because none of the conduct was done by Rushmore,

---

[5] The Court will address these three Counts together because the parties consolidated their arguments as to these Counts in their briefing.

but rather RAS. Second, Count V does not establish that the fees contained were uncollectable and therefore a violation of § 1692(e) [sic]. Paragraph 14 of the mortgage agreement, which authorizes the servicer to charge "fees for services . . . in connection with Borrower's default, . . . including . . . attorneys' fees." Accordingly, these Counts should be dismissed. . . . Similar to the arguments above, [in Count VI,] the Plaintiffs seek to hold Rushmore solely liable for damages due to the conduct of RAS, as the Mortgage Statements are not debt collection. Without specifically stating Rushmore's alleged wrong debt collection conduct outside of Mortgage Statements, this Count must be dismissed.

ECF No. [23] at 6-7.

Relevant to Counts IV and V, the FDCPA prohibits a "debt collector" from making a "false representation of . . . the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2)(A). The elements required for an FDCPA claim are that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant is engaged in an act or omission prohibited by the FDCPA." *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000).

Further, as to Count IV, the FCCPA is "a Florida state analogue to the federal FDCPA. . . ." *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836 (11th Cir. 2010). That said, "[t]he elements necessary to plead a claim under the FCCPA are similar but distinguishable from the elements of establishing a claim under the FDCPA. The first prong is substantially identical to the FDCPA, as the FCCPA only applies to consumer debt." *Deutsche Bank Nat. Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013) (citing Fla. Stat. § 559.55(1)). "The second prong differs from the FDCPA in that the FCCPA prohibits acts of 'persons' and, accordingly, is not limited to 'debt collectors.'" *Id.* (citing *Bacelli*, 729 F. Supp. 2d 1328). "The third prong requires an act or omission prohibited by the FCCPA." *Id.* Under Florida Statutes § 559.72(9) — the provision under which Plaintiffs bring their FCCPA claim — no person collecting consumer debts shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some legal right when such person knows that the right does not exist." § 559.72(9).

Regarding Defendants' arguments as to Count IV, the Court has already rejected the assertion that RAS, not Rushmore, committed the offending conduct alleged. The allegations in the Complaint detail Rushmore's conduct, *see, e.g.*, ECF No. [1] at 15, ¶ 92, and the attached exhibits further reflect communications by Rushmore to Plaintiffs on Rushmore letterhead, specifying wiring instructions to Rushmore, and signed by Rushmore's Payoff Department, *see id.* at 86-92. Moreover, the FDCPA defines "communication" as "the conveying of information regarding a debt *directly or indirectly* to any person through any medium." 15 U.S.C. § 1692a(2) (emphasis added); *see also* ECF No. [1] at 15, ¶ 92 ("Rushmore engaged in *indirect* 'communications' with Plaintiff as defined by 15 U.S.C. § 1692a(2) when RAS sent the January 18, 2019 debt collection letter to Plaintiffs demanding money purportedly due for a payoff of their loan." (emphasis added)). Defendants fail to address why communications sent by RAS on Rushmore's behalf do not constitute "indirect" communication. Accordingly, the Motion is denied as to Count IV.

In addition, the Court finds Defendants' arguments that Count V fails to establish that the fees noted were uncollectable to be meritless. Plaintiffs have alleged that the amounts reflected on the Incomplete Payment History, the Payoff Letter, the mortgage statements, and the Final Modification balance all differed and that Plaintiffs were concerned that these amounts were erroneous. ECF No. [1] at 10, ¶ 60. The Complaint explains that Plaintffs' concerns were based, in part, on potentially being charged ambiguous, unexplained amounts, such as $26,661.44 in charges labelled "Recoverable Corporate Advances," in addition to the estimated fees. *Id.* at 10-11, ¶ 63. Further, Plaintiffs take issue with Rushmore sending the Incomplete Payment History, "which included fees that RAS sent on the January 17, 2019 debt collection letter to Plaintiffs

demanding money purportedly due for a payoff of their loan." *Id.* at 16, ¶ 97; *see also id.* at 64-85 (reflecting charges for "MISC. CORPORATE DISBURSEMENT").

These allegations raise plausible inferences that Rushmore's Incomplete Payment History misrepresented the character, amount, or status of Plaintiffs' debt. *See Meyer*, 385 F. Supp. 3d at 1245 (concluding that "it is *plausible* that the corporate advances line item could mislead or be unfair to the least sophisticated consumer. Indeed, the least sophisticated consumer might assume that the figure under the corporate advances line item does not include attorney's fees, late charges, or other fees associated with the debt[, which] . . . plausibly gives the least sophisticated consumer in Meyer's shoes a misleading impression about the character of the debt. And, as the [Court of Appeals for the] Seventh Circuit reiterated in *Fields*, '[i]t is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeabl[y] assess the validity of the debt.'" (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004)); *Rios v. Rushmore Loan Mgmt. Servs., LLC*, No. 16-81973-CIV, 2017 WL 3130442, at *2 (S.D. Fla. July 24, 2017) (finding that the plaintiffs had stated an FDCPA claim based on allegations that the defendant misrepresented the character, amount, or legal status of the plaintiffs' debt by "repeatedly claimed that Plaintiffs were indebted to Defendant for sums which had already been paid by Plaintiffs, or for fees that were not permitted").

Further, the Court is perplexed by Defendants' piecemeal quoting of paragraph 14 of the Mortgage Agreement, which conveniently excludes the exact kind of language that the Eleventh Circuit determined was dispositive in *Prescott v. Seterus, Inc.*, a case that Plaintiffs repeatedly cite throughout their Complaint and Response. 635 F. App'x 640 (11th Cir. 2015). The complete language of paragraph 14 states that "Lender may charge Borrower for services *performed* in connection with Borrower's default . . . ." ECF No. [1] at 29 (emphasis added); *but see id.* at 12,

¶ 70 (describing the provisions of the Mortgage Agreement and Mortgage Note breached by charging estimated future fees). The Eleventh Circuit relied on similar loan agreement language in holding that the least sophisticated consumer would not have understood the agreement to expressly authorize a lender to charge estimated future fees. *See Prescott*, 635 F. App'x at 644 ("The least sophisticated consumer would not have understood the language of Section 19 of the agreement to reach so broadly. The remainder of the agreement obligated the borrower to pay only those fees 'incurred' or 'disbursed' by the lender for 'services performed in connection with [his] default.' That past-tense language does not encompass forward-looking estimated fees."); *see also Kaymark v. Bank of Am.*, 783 F.3d 168, 175 (3d Cir. 2015) (finding that the "most natural reading" of similar language, when viewed "through the lens of the least-sophisticated consumer," was "that [the lender] was not authorized to collect fees for not-yet-performed legal services and expenses"). Given the clear and repeated allegations in the Complaint that Plaintiffs were concerned they were being charged for estimated fees and various costs in error, the Court concludes that Plaintiffs have sufficiently alleged an FDCPA claim. Therefore, Defendants' Motion is denied as to Count V.

The Court concludes that, consistent with the discussion above, Plaintiffs have sufficiently alleged an FCCPA claim in Count VI. The Court has already concluded that Defendants' arguments with regard to RAS's conduct are meritless. The Complaint sufficiently alleges that Rushmore engaged in improper conduct in attempting to collect Plaintiffs' debt by sending Plaintiffs the Payoff Letter with estimated fees. Additionally, the Court's conclusion that the mortgage statements discussed in Count II were debt collection activities applies with equal force to Count VI. *See Reese*, 678 F.3d at 1214-17 (finding that a letter which explicitly "demand[ed] full and immediate payment of all amounts due and owing thereunder" constituted debt collection activity); *cf. Helman*, 85 F. Supp. 3d at 1328 (finding that four separate letters sent by defendant

loan servicers did not constitute debt collection activity in part because they did not demand payment or delver an ultimatum or establish a deadline). Thus, Defendants' Motion is denied as to Count VI.

### E. Count VII: Carlsbad's Violation of § 559.72(9) of the FCCPA

Lastly, Defendants contend that Count VII should be dismissed, arguing that:

> Count VII seeks claims under the FCCPA as to Carlsbad for debt collection violations. However, the Complaint is devoid of any fact related to Carlsbad. To determine the existence of vicarious liability, a court must first assess whether the principal had the necessary agency relationship with the direct wrongdoer to support such liability. *See CFTC v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009) (per curiam). A court may find an agency relationship where the principal exercised "substantial control" over the agent's actions, ratified the agent's conduct, or made representations that the agent acts with authority. *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6586-87 (FCC May 9, 2013). . . . Here, Carlsbad merely holds the subject loan. They have no communication with the Plaintiffs and delegated the modification, and communication process to Rushmore and counsel. Given the lack of allegations against Carlsbad and lack of allegations to establish vicarious liability, the Count must be dismissed.

ECF No. [23] at 7.

In Response, Plaintiffs contend that Defendants misrepresent the allegations concerning Carlsbad, and explain that Rushmore's Notice of Servicing Assignment, which was sent on Carlsbad's behalf, advised Plaintiffs that Carlsbad now owned their loan and was "authorized to receive legal notices and to exercise (or cause an agent on its behalf to exercise) certain rights of ownership with respect to your loan." ECF No. [1] at 49. Plaintiffs also assert that Rushmore's knowledge of the prohibited acts undertaken can be imputed on Carlsbad through an agency theory because all of Rushmore's actions were undertaken on Carlsbad's behalf and with its knowledge and the allegations in the Complaint state that over 600 complaints have been filed with the Consumer Financial Protection Bureau (the "CFPB") concerning Rushmore's improper loan servicing practices. *Id.* at 12, ¶ 71.

As an initial matter, Defendants' claim that the Complaint is devoid of any facts relating to Carlsbad is patently false. *See id.* at 6, ¶¶ 32-33; *id.* at 11, ¶¶ 67-68; *id.* at 12-13, ¶¶ 71-75; *id.* at 18, ¶¶ 110-12. Further, as Plaintiffs correctly note, the language in the Notice of Servicing Assignment indicates that Rushmore, as Carlsbad's loan servicer, was authorized to act on Carlsbad's behalf in handling the ongoing administration of Plaintiffs' loan. *Id.* at 48.

Likewise, upon reviewing the facts alleged in the Complaint, the Court concludes that Plaintiffs have sufficiently alleged the existence of an agency relationship. Specifically, the Complaint alleges that "Rushmore, as the loan servicer, acted as a debt collector by attempting to collect amounts on behalf of the principal, Carlsbad through its trustee, Wilmington." *Id.* at 11, ¶ 67. Moreover, "Rushmore on behalf of Carlsbad, charged Plaintiffs thousands of dollars for estimated fees and costs, 'Estimates' necessary to payoff their loan to avoid foreclosure," in violation of the FCCPA and the FDCPA. *Id.* at 13, ¶ 73.

Similarly, the Complaint states that Carlsbad and Rushmore knew "that the 'estimated' charges [were] illegal amounts that [could not] be collected in a borrower's loan payoff letter because each maintain[ed] records of the actual costs and fees associated with each borrower's loan," and because both "know that the standard mortgage only allows them to recover fees and costs actually incurred." *Id.* at 13, ¶ 74. Plaintiffs also contend that "Carlsbad, and its agents, [] knew demanding payment of fees not yet incurred was not permitted because it violated Carlsbad's very mortgage agreement and note." *Id.* at 12, ¶ 71. Additionally, "Carlsbad, through its trustee Wilmington, as a sophisticated mortgage lender regularly engaged in the mortgage loan industry, knew it could only charge fees actually incurred, and not 'estimated' fees," because (1) of the Eleventh Circuit's opinion in *Prescott*; (2) "following the *Prescott* decision, the media and trade publications issued warnings against using 'estimated' fees not incurred in reinstatement or payoff

letters, especially in the Eleventh Circuit"; and (3) "the CFPB has received over 600 complaints concerning Rushmore's improper loan servicing practices, many involving similar complaints regarding requests for debt not actually owed." *Id.* at 12, ¶ 72; *id.* at 18, ¶¶ 110-11. Finally, the Complaint alleges that "Rushmore's knowledge can be imputed to Carlsbad through agency theory." *Id.* at 12, ¶ 72; *id.* at 18, ¶ 112.

Though the Court notes that fact-intensive inquiries, such as determinations of the existence of an agency relationship, are not properly raised at the motion to dismiss stage, it nonetheless concludes that the allegations in the Complaint are sufficient to survive dismissal. *See Larach v. Standard Chartered Bank Int'l (Ams.), Ltd.*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (finding that fact-intensive inquiries, such as whether plaintiffs have alleged facts establishing that an agency relationship existed, are inappropriate for consideration at the motion to dismiss stage). Plaintiffs have alleged that Rushmore was acting as Carlsbad's agent in handling the ongoing administration of Plaintiffs' loan. Based on these allegations, the Court concludes that Plaintiffs have sufficiently pled facts upon which they could plausibly be entitled to relief. *See Kaplan*, 88 F. Supp. 2d at 1363 (concluding that knowledge could be imputed on the principal pursuant to an agency theory where the complaint alleged that the agents were all acting jointly and in concert); *see also Bank of Am., N.A. v. Zaskey*, No. 9:15-cv-81325, 2016 WL 2897410, at *6 (S.D. Fla. May 18, 2016) (finding that the complaint sufficiently alleged an agency relationship based on facts that the actor represented himself as the agent of the principal and conducted affairs on the principal's behalf); *Compass Bank v. Vanpelt*, No. CA10-1624, 2015 WL 2433609, at *2 (Fla. Cir. Ct. Apr. 2, 2015) (concluding that the "[k]nowledge of the agent [could] be imputed to the principal through agency theory," where the complaint alleged that the loan servicers were acting as agents

on behalf of the principal, who was the holder or owner of the note and mortgage subject to foreclosure). Accordingly, Defendants' Motion is denied as to Count VII.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion, **ECF No. [23]**, is **DENIED**. Defendants shall file an Answer to Plaintiffs' Complaint **by no later than Arpil 6, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 25, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record